Ronald J. DOMINGUE, et al.,
Plaintiffs,

v.

OCEAN DRILLING AND EXPLORA-
TION COMPANY,
Defendant–Appellee,

v.

DIMENSIONAL OILFIELD SERVICES,
INC., Defendant–Appellant.

No. 90–4083.

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1991.

Hal J. Broussard, Susan A. Daigle, Broussard, David & Diagle, Lafayette, La., for defendant-appellant.

Timothy P. Hurley, Michael J. Maginnis, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for defendant-appellee.

Before BROWN, POLITZ, and JOHNSON, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Once more we embark on a voyage through the familiar marshland area of the law set aside for classifying the oil and gas

exploration services contract as wet or dry. In this case, as is commonplace in the oil and gas industry, the contract between the oil company and the servicer/contractor consists of two parts, a broadform blanket agreement followed by a later specific work order covering the specific work to be done, wireline services on a movable jackup drilling rig. The district court found that the contract was maritime in nature because the wireline services provided enabled the rig, which the law recognizes as a *Robison*-type vessel,[1] to "perform its function and mission as a jack up drilling barge." The court therefore adjudged the case to be governed by federal maritime law rather than Louisiana law, which would have invalidated the indemnity provision in the blanket agreement.

For this highly fact-specific inquiry, we apply the factors recently set forth for this Court through Judge Rubin in *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313 (5th Cir.1990), which leads to our conclusion that the contract for wireline services furnished in this case was not a maritime contract. State law, therefore, applies, and we reverse and remand.

### How It All Began

On August 27, 1983, Dimensional Oil Services, Inc. (Dimensional) entered into a blanket service contract with Ocean Drilling and Exploration Company, Inc. (ODECO), to provide services to ODECO's extensive oil and gas drilling and exploration operations. Although denominated a contract, this document actually imposed no duties on either party. Instead it contemplated that the parties would later enter into a true contract, which, in addition to its specific terms, would embody the clauses set forth in the preliminary document, to avoid their repetition. It contained an indemnity provision whereby Dimensional agreed to "indemnify, defend and hold harmless [ODECO] from and against ... any and all claims, demands, or actions for damages to persons and/or property ..." while engaged in performing services for ODECO. As is the custom, at least in the offshore oil and gas industry, and as contemplated by Dimensional and ODECO, ODECO later issued written or verbal orders to Dimensional directing it to provide services on ODECO drilling rigs pursuant to the terms of the original document as modified by the work order. The blanket document supplemented by the later work order constituted the actual contract which was to cover each particular operation.[2]

On September 9, 1987, Dimensional received an oral work order instructing Dimensional to perform wireline services[3] on ODECO's jackup drilling rig, the OCEAN CONQUEST, on September 14–15, 1987. The rig was located 30 miles off the Louisiana coast on the outer continental shelf. Plaintiff Ronald Domingue, an employee of Gulf Coast Well Testers, Inc. (Gulf Coast), was performing well-testing work unrelated to Dimensional's wireline operation on September 14. He allegedly sustained injuries when he tripped and fell over a lubricator, a piece of equipment which the Dimensional crew had placed on the deck of the rig.

Domingue filed suit against ODECO complaining of improper working condi-

---

**1.** We have consistently applied general maritime law and the Jones Act guidelines set down by this Court through Judge Wisdom in *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir. 1959), to accidents aboard special-purpose watercraft such as submersible, semi-submersible, jackup, and other similar rigs. As we stated in *Houston Oil & Minerals Corp. v. American Int'l Tool Co.*, 827 F.2d 1049, 1053 (5th Cir.1987):
[w]e take as a given that in this circuit, at least in the area of personal injury, admiralty jurisdiction and the applicability of maritime law to these *Robison*-defined special-purpose watercraft is unassailably established.
*See also, Vickers v. Chiles Drilling Co.*, 822 F.2d 535 (5th Cir.1987) (Jones Act and maritime law applied on jackup rig); *Wallace v. Oceaneering Int'l*, 727 F.2d 427 (5th Cir.1984) (semisubmersible bolted to Gulf floor is vessel for Jones Act purposes).

**2.** The blanket agreement states that it, "together with any applicable work order, shall control and govern all work accepted by [Dimensional] and shall define the rights and obligations of [ODECO] and [Dimensional]...."

**3.** A team performing a wireline operation services partially drilled oil and gas wells and also gathers geophysical data relevant to production.

tions. Later he joined Dimensional, which he alleged was also responsible for his physical injuries. ODECO filed a cross-claim against Dimensional seeking full indemnity under the 1983 blanket contract. In response Dimensional asserted that the Louisiana Oilfield Indemnity Act (LOIA) [4] invalidated the indemnity clause in the contract. The parties each filed Motions for Summary Judgment on the indemnity issue. The trial court found that the wireline services contract was a maritime contract and therefore granted ODECO's summary judgment motion since acknowledged maritime law, unlike Louisiana state law, upholds the indemnity agreement. The court then entered F.R.Civ.P. 54(b) final judgment on its summary judgment order, allowing Dimensional to file this appeal.

### A Salty Flavor?

This Court recently decided *Davis & Sons, Inc. v. Gulf Oil Corp., supra*, which examined the identical question before us today—whether an oil and gas exploration specialty services contract is maritime or non-maritime. *Davis* involved a situation identical in several respects to the one before us. Davis, a specialty services contractor, provided maintenance services to Gulf, a major oil and gas exploration company, pursuant to a specific work request under a blanket contract. The blanket contract included an indemnity clause by which Davis indemnified Gulf for physical injury and other claims arising from the contractor's performance. 919 F.2d at 314. A supervisor drowned while performing work under the contract, and his representatives sued Gulf and Davis. After the wrongful death claims were settled, Davis brought a declaratory judgment action against Gulf contending that the LOIA voided the indemnity clause in its blanket contract with Gulf. Construing the blanket agreement and the specific work order together, this Court held that the contract was maritime in nature and upheld the indemnity clause. *Id.* at 317.

*Davis* is dissimilar from the instant case in two major respects. First, the claims

for which Gulf sought indemnity were made by representatives of the decedent, who was an employee of Davis, the contractor itself. In the instant case, the claimant was not employed by Dimensional and his work on the OCEAN CONQUEST was unrelated to Dimensional's wireline operation. An even more significant difference is the fact that the work order required that Davis provide labor to perform maintenance work on the wellheads, flow lines, storage tank batteries, and related production equipment "primarily through the use of self-propelled work barges...." *Id.* at 314. The contractor's crew would travel aboard the work barge which would be anchored to the work location before the maintenance work could begin. *Id.* In fact, work orders were often carried out on the barge itself, including the work which gave rise to the action. *See id.* In contrast, Dimensional supplies no vessel as such when executing an ODECO work order. Of course, as we discuss below, jack-up rigs such as the OCEAN CONQUEST (furnished and owned by ODECO), on which the wireline operation was executed, have often been judicially characterized as vessels.

### Maritime/Non–Maritime Guidelines

In reaching its determination that maritime law governed that case, the *Davis* Court set forth six factors which it crystallized from this Circuit's jurisprudence directing the fact-specific inquiry whether the contract is maritime or non-maritime. In the Court's words, these factors are:

1) What does the specific work order in effect at the time of injury provide?

2) What work did the crew assigned under the work order actually do?

3) Was the crew assigned to work aboard a vessel in navigable waters?

4) To what extent did the work being done relate to the mission of that vessel?

5) What was the principal work of the injured worker?

---

**4.** La.Rev.Stat.Ann. § 9:2780 (West 1990).

6) What work was the injured worker actually doing at the time of injury? *Id.* at 316. The *Davis* factors guide the present inquiry because we must read the Dimensional–ODECO blanket agreement modified by the later work order together as the actual contract and determine whether it is maritime or non-maritime in character.

*Factor (1) The Specific Work Order.* Dimensional's sole obligation under the September 9, 1987, work order which Dimensional received via telephone from ODECO was to provide wireline services aboard the OCEAN CONQUEST. ODECO did not request that Dimensional perform any other services pursuant to this particular work order. *Factor (2) The Actual Work Performed.* Dimensional actually performed a wireline operation aboard the OCEAN CONQUEST on September 14–15, 1987. It is undisputed that the Dimensional crew performed only wireline services and no other work while aboard the ODECO rig. *Factor (3) Aboard a Vessel?* It is also clear that the work was performed exclusively on the OCEAN CONQUEST, a movable jackup drilling unit located 30 miles off the Louisiana coast in the Gulf of Mexico. Such a rig has been characterized as a vessel by this Court.[5]

*Factor (4) Relationship of the Work to the Mission of the Vessel.* It should no longer be open to dispute that wireline services are peculiar to the oil and gas industry and, viewed apart from the circumstances under which they are performed, are distinctly non-maritime in nature. *Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 955–56 (5th Cir.1988).[6] Further, the situs of performance of a wireline operation does not definitively categorize it. As *Davis* prescribes, whether a contract is or is not maritime depends on the " 'nature and character of the contract' rather than on its place of execution or performance." 919 F.2d at 316 (quoting *North Pacific S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 223, 63 L.Ed. 510, 512 (1919)). The Dimensional–ODECO contract does not become maritime simply because the wireline services were performed aboard the drilling rig vessel. A specialty services contract related to oil and gas exploration and drilling takes on a salty flavor when the performance of the contract is more than incidentally related to the execution of the vessel's mission.

We pointed out the distinction between a contract which sufficiently touched the operation of a vessel to attain maritime status and one that did not in *Thurmond*. In that case, wireline operators P & S Well Services and Delta Well Surveyors contracted with Gulf Oil to perform wireline services on Gulf's offshore wells in the Louisiana delta. Through a provision in the blanket contract P & S and Delta indemnified Gulf for personal injury or prop-

---

**5.** *See supra* note 1.

**6.** *Thurmond,* decided in 1988, did not mention this Court's earlier decisions in *Pippen v. Shell Oil Co.,* 661 F.2d 378 (5th Cir.1981), and the related en banc decision in *Boudreaux v. American Workover, Inc.,* 664 F.2d 463 (5th Cir. Unit A 1981), *reh'g en banc,* 680 F.2d 1034 (5th Cir. Unit A 1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983). This Court expressly held in *Pippen* that offshore wireline services were maritime in nature:

> Since offshore drilling ... is maritime commerce, it follows that the purpose of Pippen's [wireline operations] work was to facilitate maritime commerce.... [W]e are therefore compelled to conclude that the work performed by Pippen had a realistically significant relationship to maritime commerce. Thus, Pippen was engaged in maritime employment at the time of his injury.

661 F.2d at 384 (footnotes omitted). *Accord, Boudreaux,* 680 F.2d at 1052.

The vitality of the *Pippen–Boudreaux* holdings may continue to be in doubt after the Supreme Court's decision in *Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), since in *Herb's Welding* the Court rejected this Circuit's "expansive view of maritime employment" in decisions such as *Pippen* and *Boudreaux. See id.* at 418–19, 105 S.Ct. at 1424–25, 84 L.Ed.2d at 411 (citing *Pippen* ). *See also, id.* at 423, 105 S.Ct. at 1427, 84 L.Ed.2d at 414 ("[t]here is nothing inherently maritime about" building and maintaining pipes and platforms on the outer continental shelf). In *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 539 n. 11 (5th Cir.1986), the Fifth Circuit determined that *Herb's Welding* presented no conflict with the facts of that particular case. *But see, Union Texas Petroleum Corp. v. PLT Eng'g, Inc.,* 895 F.2d 1043, 1049 n. 10 (5th Cir.1990).

erty damage claims arising out of work performed under the contract. P & S provided a work barge and crew to perform the wireline services assigned by Gulf.

On one such assignment, Thurmond, a Delta employee, suffered injuries when he stepped from the P & S barge onto the well head and part of a motor valve popped off, striking him on the chin. Thurmond brought suit against Gulf, which cross-claimed against P & S and Delta, arguing that maritime law should apply to give the indemnity provision full effect. Gulf asserted that the predominant obligation under the contract was to provide a barge and crew with wireline equipment. We determined that the use of the work barge was only incidental to the performance of the contract, however, and held that Louisiana law governed the indemnity provision. 836 F.2d at 956. Although the contract might have even "contemplate[d] the hiring of vessels and seamen" to carry out the services, because the use of a vessel was, at best, incidental to the performance of the contract, it was "clearly a nonmaritime obligation." *Id.* at 955.

*Thurmond* distinguished *Theriot v. Bay Drilling Corp.,* 783 F.2d 527 (5th Cir.1986), where we determined that a contract to furnish the equipment, materials, supplies, and services necessary to drill an oil well was maritime because the supply of a vessel was central to the contract: "the main piece of equipment to be supplied by Bay Drilling was a vessel...." Therefore, the contract "did not merely touch incidentally on a vessel, but directly addressed [its] use and operation...." *Id.* at 538. In contrast, the contracts in *Thurmond* and in this case did not require that the contractor provide a vessel.

ODECO also argues that the fact that Dimensional performed wireline services under this contract on a jackup drilling rig, as opposed to a fixed platform, requires the application of maritime law. *Thurmond* and *Davis* are clear, however, that such a circumstance is not controlling.[7] The injured employee in *Thurmond,* for instance, had stepped from the transportation barge to the fixed oil well platform at the moment that the wellhead exploded and parts of it struck him causing his injury. 836 F.2d at 953. To suggest, as ODECO does, that *Thurmond* is distinguishable because there the work was being performed on a fixed platform and not a vessel inevitably leads to the universally rejected contention of situs—that the contract would have been a maritime contract had the plaintiff stepped back onto the barge to do work there when flying objects from the explosion aboard the platform caused his injury.[8] On the contrary, the fact that the OCEAN CONQUEST is a vessel does not decisively affect the nature or character of the Dimensional–ODECO contract. The fact of the OCEAN CONQUEST's being a vessel is nothing more than incidental to its purpose here of serving as a work platform for the execution of this particular service contract.[9]

---

7. Compare the present situation to *Davis,* 919 F.2d at 317, where we held that the transportation function of a barge which served as a mobile maintenance unit for a work crew which performed its work predominantly aboard the barge "was more than 'merely incidental' to its primary purpose of serving as a work platform." We stated:

> The mission of this vessel, therefore, was to serve as a mobile maintenance unit.... The work done by the crew of Barge 11171 was inextricably intertwined with maritime activities since it required the use of a vessel and its crew.

(quoting *Brunet v. Boh Bros. Constr. Corp.,* 715 F.2d 196, 198 (5th Cir.1983)).

8. *See id.* at 316 (whether contract is or is not maritime depends upon its "nature and character ... rather than on its place of execution or performance"). *See also, Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 889, 6 L.Ed.2d 56, 60 (1961); *Theriot,* 783 F.2d at 538.

9. Though often cited by partisans in these controversies (and less often in our own similar cases), this case being no exception, *Sohyde Drilling & Marine Co. v. Coastal State Gas Prod. Co.,* 644 F.2d 1132 (5th Cir.1981), really has nothing to do with the primary question before us. We mention it here merely to declare this fact. The question in *Sohyde* was not whether there existed a maritime contract. The only question was whether there was admiralty jurisdiction (through Extension of the Admiralty Act, 46 U.S.C.App. § 740) for a tort claim of damage principally to the oil bearing structure of an oil well occasioned by a well blowout. Expenses generated by the blowout were incurred in subsequent attempts to control the blowout and

*Factors (5) & (6) The Work of the Injured Employee.* In addition to considering the role of the specialty services contract in relation to the mission of the vessel, *Davis* requires that we inquire into the principal work of the injured worker. *Davis* factors (5) and (6) assume that the injured worker was employed by Davis, the specialty services contractor performing work under the two-part contract in dispute. Under *Davis,* the principal work of the injured party is relevant in aiding the Court's construction of the service contract in question. Although obligatory to the *Davis* analysis, these factors cannot be applied literally to determine the nature of the ODECO–Dimensional contract. *Davis* looks to the work of the employee engaged to execute the contract whose nature is in question, that is, in this instance, the work of the Dimensional employees. Since Domingue was neither hired by Dimensional nor engaged in performing work required of that company, it would be immaterial to the nature of the Dimensional contract whether his work was or was not maritime. He was an employee of Gulf Coast in a completely unrelated well-testing operation aboard the OCEAN CONQUEST. As emphasized above, this situation is different from the context present in *Davis,* and the nature of his work has little, if any, relevance.

Left with the Dimensional–ODECO contract and the undisputed fact that Dimensional was to, and did, perform wireline services exclusively, we hold that this case is controlled by *Thurmond,* and the service contract is therefore non-maritime. Accordingly, LOIA controls to invalidate the indemnity provision of the blanket contract. We REVERSE the district court's grant of summary judgment to ODECO with directions to grant Dimensional's motion for summary judgment, and REMAND for further action consistent with this opinion.

repair surface facilities at the well, to achieve partial production of reserves from a relief well, and to plug the original well. *Id.* at 1138. On then-existing admiralty principles of torts occurring on navigable waters, admiralty jurisdiction was plainly present. *Id.* at 1135. The new and only wrinkle was the impact of *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), which required that the injury for which there is a claimed tort recovery bear a significant relationship to maritime activity. On the basis of *Executive Jet,* we held that the district court had improperly assumed that admiralty jurisdiction applied to the tort claims. *Sohyde,* 644 F.2d at 1138. *See also, Pippen,* 661 F.2d at 384 n. 10 (*Sohyde* unrelated to issue of whether work under oil and gas services contract bears significant relationship to maritime activity).