**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 91-3103
_____


BRUCE SMITH,
Husband of/and TERESA SMITH,

Plaintiffs,

VERSUS

PENROD DRILLING CORP., et al.,

Defendants.

* * * * * * * * *

CHEVRON U.S.A., INC.,

Third-Party
Plaintiff-Appellee,


VERSUS

CERTAIN UNDERWRITERS AT LLOYD'S LONDON
and Various Insurers,

Third-Party
Defendants-Appellants.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____


April 30, 1992

Before POLITZ, Chief Judge, SMITH, Circuit Judge, and FITZWATER,[*]
District Judge.

JERRY E. SMITH, Circuit Judge:

_____

[*] District Judge of the Northern District of Texas, sitting by designa-
tion.

I.

The original claim, which has been settled, was a Jones Act, general maritime law, and Louisiana tort law action brought by a Penrod Drilling Corporation (Penrod) employee and his wife to recover damages for injuries sustained in the course of work on a Chevron U.S.A., Inc. (Chevron), platform situated on the outer continental shelf. Penrod and appellee Chevron were named as defendants. Chevron filed a third-party complaint against Appellant, Underwriters at Lloyd's, London (the underwriters), to recover pursuant to liability insurance policies issued by the underwriters to Penrod. The underwriters filed a cross-motion for summary judgment on the theory that the Louisiana Oilfield Indemnity Act of 1981, La. Rev. Stat. 9:2780 (LOIA), applies and that under LOIA, any insurance to Penrod purportedly extending coverage to Chevron was void.

The primary issue in this case is whether maritime law applies or whether, instead, Louisiana law applies as surrogate federal law under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. §§ 1331-1356. Penrod and Chevron contracted, in a letter agreement, for Penrod to "workover" a well on a Chevron platform situated on the outer continental shelf. The letter agreement incorporates by reference all of the provisions of a drilling contract between Chevron and Penrod.

The drilling contract contains reciprocal indemnity provisions requiring each party to indemnify the other for personal injury claims brought by their respective employees. Penrod was obligated

2

to obtain and maintain insurance and name Chevron as an additional assured. Pursuant to this obligation, Penrod obtained insurance from the underwriters.

The drilling contract, incorporated by reference in the letter agreement, provides that Penrod will furnish and use a specific jackup drilling vessel to be used in performing its service obligations. At the time of the accident, the deck of this jackup barge was positioned over Chevron's fixed platform. The plaintiff was trying to reach a safety valve assembly (a "blowout preventer hoist block") attached to the jackup barge. Instead of using the ladder attached to the jackup, he stood on top of horizontal fencing on the platform. The fencing pulled apart, and the plaintiff fell.

The district court found that the contract was maritime, granted summary judgment in favor of Chevron, and ordered that the underwriters defend and indemnify Chevron in accordance with the indemnity and insurance provisions contained in a workover contract between Chevron and Penrod. The district court entered a final judgment, pursuant to Fed. R. Civ. P. 54(b), which the underwriters appeal.


## II.

The underwriters contend that Louisiana law applies to this accident through OCSLA; Chevron argues that maritime law controls. OCSLA provides, in relevant part, as follows:

> To the extent that they are applicable and not inconsis-
> tent with this Act or with other Federal laws and

3

regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .

43 U.S.C. § 1333(a)(2)(A). Subsection (a)(1) explicitly places "artificial islands, and all installations and other devices permanently or temporarily attached to the seabed" under OCSLA's coverage. 43 U.S.C. § 1333(a)(1).

In deciding whether a case is governed by OCSLA, this court has articulated the following test:

[F]or adjacent state law to apply as surrogate federal law under OCSLA, three conditions are significant. (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.

Union Texas Petroleum Corp. v. PLT Eng'g, 895 F.2d 1043, 1047 (5th Cir.), cert. denied, 111 S. Ct. 136 (1990); see also Rodrique v. Aetna Cas. & Surety Co., 395 U.S. 352, 355-66 (1969).[1] The parties agree that the pertinent Louisiana law is not inconsistent with federal law. See also Matte v. Zapata Offshore Co., 784 F.2d 628,

---

[1] The Rodrique Court was rather sanguine in its belief that factors one and two would rarely conflict, i.e., that maritime law would rarely apply to controversies on a situs covered by OCSLA. 395 U.S. at 359-62. The past ten years of caselaw in this circuit illustrate that maritime contracts often are carried out on the outer continental shelf. See, e.g., Laredo Offshore Constr. v. Hunt Oil Co., 754 F.2d 1223 (5th Cir. 1985); Lefler v. Atlantic Richfield Co., 785 F.2d 1341 (5th Cir. 1986); Lewis v. Glendel Drilling Co., 898 F.2d 1083 (5th Cir. 1990), cert. denied, 112 S. Ct. 171 (1991).

630 (5th Cir.), cert. denied, 479 U.S. 872 (1986).  We therefore analyze only the issues of situs and applicability of maritime law.

When an event occurs on an OCSLA situs but also is governed by maritime law, maritime law controls.  Laredo Offshore, 754 F.2d at 1229.  But see Matte, 784 F.2d at 630 (state law applies on fixed platforms to the exclusion of maritime law).  We apply the earlier[2] Laredo Offshore rule in this case and hold that maritime law applies.

### A.

This accident took place on an OCSLA situs.  The injury occurred when the plaintiff, who was standing on some horizontal fencing on the platform, reached for some equipment fastened to the jackup barge;  the fencing collapsed, and the plaintiff fell.  Drilling platforms constitute "artificial islands" under section 1333(a)(1).  Rodrique, 395 U.S. at 363.  Thus, the accident took place on an OCSLA situs.

Chevron notes that the contract provided that work would be done from the jackup boat.  Therefore, Chevron concludes that we should find that the accident occurred on the jackup boat, not on the platform.  We find no support for this assertion.

---

[2]  In the event of conflicting panel opinions from this court, the earlier one controls, as one panel of this court may not overrule another. Heitkamp v. Dyke (In re Dyke), 943 F.2d 1435, 1442-43 (5th Cir. 1991).

B.

Deciding whether the contract at issue is a maritime contract fortunately does not require us to traverse the now-familiar maze of cases interpreting similar contracts.  In Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 332 (5th Cir. Unit A Aug. 1981), the court held that a contract for drilling and workover services was a maritime contract.  See also Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge "Mr. Charlie," 424 F.2d 684, 691 (5th Cir.), cert. denied, 400 U.S. 832 (1970) (drilling and workover contract obviously maritime).  The contract at issue here is a contract for drilling and, later, workovers.

In determining whether a contract is maritime, this court in Davis & Sons, Inc. v. Gulf Oil Corp., 919 F.2d 313, 316 (5th Cir. 1990), outlined the following test:

> We consider six factors in characterizing the contract: (1) what does the specific work order in effect at the time of the injury provide? (2) what work did the crew assigned under the work order actually do? (3) was the crew assigned to work aboard a vessel in navigable waters[?] (4) to what extent did the work being done relate to the mission of that vessel? (5) what was the principal work of the injured worker? and (6) what work was the injured worker actually doing at the time of the injury?

See also Domingue v. Ocean Drilling & Exploration Co., 923 F.2d 393, 395-96 (5th Cir. 1991) (also adopting this analysis), cert. denied, 112 S. Ct. 874 (1992).  Application of these factors to the instant case is unenlightening, as each factor simply turns on the question of whether workover operations are maritime. Nevertheless, we briefly summarize our analysis of each factor.

6

## 1)  Provisions of Work Order

The original contract was for drilling services, and the specific agreement was for workover operations of wells on a fixed platform.  The workover contract should be read with the original drilling contract.  See Davis, 919 F.2d at 315.  Since a drilling and workover contract is maritime, this contract is maritime.

## 2)  Actual Work Assigned

Both parties agree that at the time of the accident, the plaintiff's crew was assigned to workover activities.

## 3)  Assigned to Work on a Vessel

The crew was assigned to work on the Penrod jackup, which is a vessel.  The underwriters argue that the jackup was not a vessel at the time of the accident;  since the jackup was attached to the platform, it was thus a "device temporarily attached to the seabed" under the OCSLA.  A very long series of cases, beginning with Offshore Co. v. Robison, 266 F.2d 769 (5th Cir. 1959), has held that jackup boats are vessels.  Even if the underwriters are correct that OCSLA is intended to apply to attached jackup boats, we are bound by our circuit precedent.

## 4)  Relationship of the Work to Vessel Mission

The service at issue, the workover of a well, was the very mission of the Penrod jackup.

## 5) Principal Work of the Injured Employee

The employee's principal work was to perform workovers from the jackup vessel. Our caselaw designates it as maritime. See, e.g., Corbitt, 654 F.2d at 332.

## 6) Work of the Injured Employee at Time of Accident

The plaintiff was injured while standing on a fixed platform, but this one factor does not alter our characterization of the contract as maritime.

## III.

Although we have been able to resolve the case at hand by relying upon explicit precedent, we note that our caselaw arguably conflicts with OCSLA. As explained in Rodrique, Congress intended that, after the passage of OCSLA, the oil and gas exploration industries would be governed by state law. Several of our cases recognize Congress's intention to limit the application of maritime law in oil and gas industry cases. See Matte, 784 F.2d at 630; Thurmond, 836 F.2d at 954-55; Union Texas Petroleum, 895 F.2d at 1048-49. The Supreme Court has criticized our "expansive" view of maritime employment in Herb's Welding v. Gray, 470 U.S. 414, 422-23 (1985). Only our en banc court, however, can consider whether our expansive view of maritime contracts similarly should be narrowed.

After Herb's Welding, our cases that propound the maritime nature of offshore drilling-related contracts have been limited to their facts. See Union Texas Petroleum, 895 F.2d at 1049; Lewis,

8

898 F.2d at 1086.  In each new case, a panel of this court must comb through a bewildering array of cases that rely upon inconsistent reasoning in the hope of finding an identical fact situation.[3]  Absent en banc reconciliation, cases thus are decided on what seems to be a random factual basis.  See Lewis, 898 F.2d at 1084 ("[B]ecause of an apparently contradictory line of cases in our circuit and the uncertain policy underpinning our result, the appellant would justly ask "why?".)

## IV.

Although the accident occurred on an OCSLA situs, maritime law applies of its own force.  The employee was acting in the scope of his employment pursuant to a maritime contract.  The summary judgment in favor of Chevron therefore is AFFIRMED.

---

[3]  The following summary of caselaw demonstrates the lack of a consistent approach for dealing with these cases.  A drilling contract is maritime.  Lewis, 898 F.2d at 1086;  Theriot v. Bay Drilling Corp., 783 F.2d 527 (5th Cir. 1986).  A contract for the construction of drilling platforms is non-maritime.  Laredo Offshore, 754 F.2d at 1232.  A contract for the construction of gathering lines is non-maritime.  Union Texas Petroleum, 895 F.2d at 1050.  A contract for providing wireline services to drilling platforms is non-maritime.  Dominque, 923 F.2d at 398;  Thurmond, 836 F.2d at 955.  A contract for maintenance of oil wells using a non-jackup barge is maritime.  Davis, 919 F.2d at 317.  A drilling and workover contract is maritime.  Corbitt, 654 F.2d at 332.