**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 91-4801
Summary Calendar
_____

GEORGE PIERCE DUPONT,

Plaintiff,

VERSUS

SANDEFER OIL & GAS, INC., et al.,

Defendants.

* * * * * * * * *

TELEDYNE MOVIBLE OFFSHORE, INC.,

Defendant-Appellee,

VERSUS

SANDEFER OFFSHORE OPERATING CO.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____
(June 2, 1992)

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

I.

This case arises from an injury sustained by a Tetra Technolo-
gies, Inc. (Tetra), employee. The plaintiff was injured in the

course of his employment on a jackup drilling rig that was engaged in completing a well on the outer continental shelf. Teledyne Movible Offshore, Inc. (Teledyne), Sandefer Offshore Operating Co. (Sandefer), and Applied Drilling Technologies, Inc. (ADTI), were all named as defendants. Teledyne moved for summary judgment on a claim that it was entitled to indemnity from Sandefer.

Sandefer originally contracted with ADTI to drill and complete a well; ADTI then contracted with Teledyne to provide a jackup drilling rig and to drill and complete the well. The ADTI/Teledyne contract contained reciprocal indemnity provisions requiring each party to indemnify the other for personal injury claims brought by their respective employees. After the well had been drilled, Sandefer, by way of a letter agreement, assumed "all responsibilities and obligations" of ADTI under the ADTI/Teledyne contract for the completion phase of the contract. Sandefer then hired Tetra to assist in the completion of the well.

Teledyne argues that it is entitled to contractual indemnity from Sandefer pursuant to the ADTI/Teledyne contract, which Sandefer assumed. If the contract is governed by maritime law, the indemnity provision will be enforced. Sandefer contends that the Louisiana Oilfield Indemnity Act of 1981, La. Rev. Stat. 9:2780 (LOIA), applies as surrogate federal law under the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331-1356 (OCSLA), and forbids enforcement of the indemnity provision.

The district court found that the contract was maritime, granted summary judgment in favor of Teledyne, and ordered that Sandefer defend and indemnify Teledyne in accordance with the

indemnity and insurance provisions contained the ADTI/Teledyne contract. The district court entered a final judgment, pursuant to Fed. R. Civ. P. 54(b), which Sandefer appeals.

## II.

Sandefer contends that Louisiana law applies to this accident through OCSLA; Teledyne argues that maritime law controls. OCSLA provides, in relevant part, as follows:

> To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . . .

43 U.S.C. § 1333(a)(2)(A).

In deciding whether a case is governed by OCSLA, this court has articulated the following test:

> [F]or adjacent state law to apply as surrogate federal law under OCSLA, three conditions are significant. (1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with Federal law.

Union Texas Petroleum Corp. v. PLT Eng'g, 895 F.2d 1043, 1047 (5th Cir.), cert. denied, 111 S. Ct. 136 (1990); see also Rodrique v. Aetna Cas. & Surety Co., 395 U.S. 352, 355-66 (1969). Since we find that maritime law applies of its own force to this maritime

3

contract, we do not address any other issue.

"[I]n the context of oil and gas exploration on the Outer Continental Shelf, admiralty jurisdiction and maritime law will only apply if the case has a sufficient maritime nexus wholly apart from the situs of the relevant structure on navigable waters." Laredo Offshore Constr. v. Hunt Oil Co., 754 F.2d 1223, 1230 (5th Cir. 1985). In Smith v. Penrod Drilling Corp., 1992 U.S. App. LEXIS 8725 (5th Cir. Apr. 30, 1992), modified, 1992 U.S. App. LEXIS 11868 (May 29, 1992), we held that a contract for the supply and use of a vessel for drilling, completion, and workover services was maritime. We therefore hold that the instant contract, requiring Teledyne to supply a vessel and use it for drilling and workover services, is maritime.

Sandefer relies upon Thurmond v. Delta Well Surveyors, 836 F.2d 952, 955 (5th Cir. 1988), and Dominque, 923 F.2d at 397, for the proposition that the use of a jackup rig is incidental to the completion of the well. In finding that the use of a jackup rig was incidental, however, both Thurmond and Dominque relied heavily upon the fact that the contracts at issue did not explicitly provide for the supply and equipping of a vessel; thus, the furnishing of a vessel could not have been a principal obligation of the contract.

The Dominque court distinguished the maritime contract in Davis & Sons, Inc. v. Gulf Oil Corp., 919 F.2d 313 (5th Cir. 1990), because that contract required the contractor to supply a vessel. Dominque, 923 F.2d at 395. In Thurmond, 836 F.2d at 955, we

4

similarly distinguished <u>Theriot v. Bay Drilling Corp.</u>, 783 F.2d 527 (5th Cir. 1986).  Since the ADTI/Teledyne contract required Teledyne to provide and equip a vessel, <u>Thurmond</u> and <u>Dominque</u> are not controlling, and the contract is maritime.  See <u>Smith v. Penrod Drilling Corp.</u>,1992 U.S. App. LEXIS 11868 at *1-2; <u>Lewis v. Glendel Drilling Co.</u>, 898 F.2d 1083, 1086 (5th Cir. 1990), <u>cert. denied</u>, 112 S. Ct. 171 (1991).

Sandefer next argues that even if a contract for drilling and completion in Louisiana territorial waters might be maritime, an identical contract would not be maritime if it were to be executed on the outer continental shelf.  There is no merit to this contention.  The principal obligation of a contract, not the situs of its execution, determines whether it is maritime.  <u>Davis & Sons</u>, 919 F.2d at 316.  Since we have determined that the principal obligation, the provision of a jackup boat for drilling and completion of a well, is maritime, the location of performance of the contract does not alter its maritime status.[1]

Finally, Sandefer contends that it assumed only the non-maritime portions of the ADTI/Teledyne contract.  Under Sandefer's analysis, the contract contained three separate obligations: provision of a vessel, drilling, and completion.  Sandefer urges

---

[1] Sandefer relies upon <u>Lewis</u>, 898 F.2d at 1087, which criticizes "the rather absurd inconsistency . . . between applying maritime law to certain mineral exploration contracts when the drilling occurs in state territorial waters . . . while state law governs precisely the same contractual relationship a few miles further offshore pursuant to OCSLA."  Sandefer misinterprets this comment as a holding.  Instead, it is part of a discussion criticizing the inconsistencies in Fifth Circuit law in this area.  <u>See also</u> <u>Smith v. Penrod Drilling Corp.</u>, 1992 U.S. App. LEXIS 8725, at *10-11 & n.3 (describing the same legal inconsistencies).

that it assumed the contract at the completion phase, used the jackup rig as a work platform, and assumed no part of the portion of the contract requiring provision of a vessel or drilling services. The contract may not be artificially divided in this manner.

The provision of the jackup rig was necessary for the completion phase as well as the drilling phase. Sandefer cannot argue that the contract is not maritime because the jackup rig had already arrived at its destination. Sandefer assumed all of the obligations of ADTI; these included any indemnity obligations incurred by virtue of the ADTI/Teledyne contract. Moreover, it would be absurd to hold that Teledyne would have been indemnified if Sandefer had not assumed the contract, but that, by virtue of the assignment of the contract, the indemnity provision will not be enforced.

The summary judgment in favor of Teledyne is AFFIRMED.[2]

---

[2] We deny, as moot, the motion to consolidate this appeal with the appeal in Smith v. Penrod Drilling Corp.