LANDRIEU, Judge.
Offshore Pipelines, Inc. (“OPI”) appeals the judgment of the trial court dismissing OPI’s motions for summary judgment against B & I Welding Services & Consultants, Inc. (“B & I”) and Fidelity & Casualty Company of New York (“Fidelity”). Concluding that the Louisiana Oilfield Indemnity Act (“LOIA”),[1] invalidated the defense and indemnity clause relied upon by OPI, the trial court granted summary judgment in favor of B & I. Having found the LOIA applicable, the trial court also dismissed OPI’s motion for summary judgment against Fidelity. We reverse.
*1138 FACTS
On December 1, 1988, B & I entered into a Master Liability Agreement with OPI to furnish services aboard OPI’s vessels.[2] A provision of the contract specifically provided for indemnity by B & I to OPI. The contract further required that B & I purchase and maintain certain insurance naming OPI as an additional assured under the various policies. Additionally, the contract required that B & I’s insurers agree to waive any and all rights of subrogation against OPI.
On or about July 27, 1989, while working aboard the PIPELINER V, a pipe-laying barge owned and operated by OPI, plaintiff, Larry Sampsell, allegedly injured his back. The operations being conducted on the OPI barge at that time involved the fabrication and installation of a pipeline on the Outer Continental Shelf off the coast of Louisiana. Services performed by plaintiff related exclusively to welding activities.
Plaintiffs accident occurred as he attempted to retrieve a piece of pipe to secure the plastic tarp surrounding the welding stall in which he was working. At the time of the accident, the barge was located at West Cameron 45-A on the Outer Continental Shelf off the coast of Louisiana.
Sampsell filed a personal injury suit against B & I, Fidelity (incorrectly referred to in the petition as Continental Insurance Co.) and OPI. Seeking contractual defense and indemnity pursuant to the terms of the Master Service Agreement entered into between the two companies,[3] OPI asserted a cross claim against B & I. When B & I denied it owed OPI a contractual defense and indemnity, OPI filed a Motion for Summary Judgment on its cross claim against B & I. Thereafter, claiming the Louisiana Oilfield Indemnity Act voided the indemnity provisions of the contract between OPI and B & I, B & I filed a cross motion for summary judgment.
In order to recover maintenance and cure benefits paid to Sampsell,[4] Fidelity, the primary insurer of B & I, filed “counter/cross” claims against the plaintiff and defendants OPI and B & I. Contending the waiver of subrogation clause contained in the contract between OPI and B & I and the waiver of subrogation contained in Fidelity’s insurance policy precluded them from recovering benefits paid, OPI filed a motion for summary judgment.
The trial court denied OPI’s motions for summary judgment. Stating the LOIA invalidated the indemnity provisions contained in the contract between B & I and OPI, the motion for summary judgment filed by B & I was granted and the cross claim of OPI was dismissed. In its reasons for judgment, the trial court held that Louisiana law applied by virtue of the Outer Continental Shelf Lands Act (“OCSLA”). Alternatively, in the event the OCSLA did not apply, it reasoned that Louisiana law would still control since the contract was non-maritime in nature.
Regarding OPI’s motion for summary judgment on the issue of waiver of subro-gation, judgment was rendered in favor of cross-claimant Fidelity and against cross-defendant OPI. Thereby, OPI’s motion for summary judgment was dismissed.
DISCUSSION
At issue is whether a contractual obligation to perform welding services *1139 aboard a pipe-laying barge involved in the fabrication or installation of a pipeline on the outer continental shelf off the coast of Louisiana is considered maritime in nature.
If the pertinent provisions of the contract are to be governed by Maritime Law, the requested defense and indemnity are allowed. Should the OCSLA apply to the contract, the applicability of Louisiana law is mandated. The LOIA precludes both the indemnity provision and the waiver of sub-rogation contained in the contract.
B & I relies upon Domingue v. Ocean Drilling and Exploration Co., 923 F.2d 393 (5th Cir.1991), cert. denied — U.S. -, 112 S.Ct. 874, 116 L.Ed.2d 779 (1992), Thurmond v. Delta Well Surveyors, 836 F.2d 952 (5th Cir.1988), and Brennan v. Shell Offshore, Inc., 612 So.2d 929 (La.App. 4th Cir.1993) for the proposition that Louisiana law should govern the terms of the contract because the nature of the contract was non-maritime. In Domingue, Dimensional Oil Services, Inc. entered into a blanket contract with Ocean Drilling and Exploration Company, Inc. (“ODECO”), to provide wireline services to ODECO’s extensive oil and gas drilling and exploration operations. Plaintiff was not employed by either party to the contract at issue, and his work — well testing — was unrelated to the wireline operations which were significantly related to the vessel’s mission. Domingue, 923 F.2d at 395. The purpose of the vessel was found to be incidental to the vessel’s mission as a work platform for the execution of this particular service contract. Therefore, the contract was determined to be non-maritime in nature.
In Thurmond, the issue was whether a contract to perform wireline services in navigable waters was governed by maritime law or state law. P & S Well Services entered into a blanket contract with Gulf Oil Corporation, to provide wireline services for Gulf Oil’s offshore wells in the delta areas of Louisiana. In addition to performing the wireline services assigned by Gulf Oil, P & S provided both the barge and its crew. Thurmond, a member of the crew, stepped off the barge and onto a wellhead to open the valve. When the stem and motor valve popped off the wellhead, it struck plaintiff in the chin. Concluding the principal obligation of the contract neither concerned the operation of the vessel nor was peculiar to maritime commerce, the court found that the enforceability of the contract’s indemnity provision was subject to state law.
In Brennan, this Court determined because the contract between Shell Offshore, Inc. (“Shell”) and Ray Gibbons Industries, Inc. (“Gibbons”) provided for labor at platforms and production facilities in a specified field of operations, it was non-maritime in nature. Gibbons entered into a blanket contract with Shell to provide welders, laborers and related labor. Plaintiff, an employee of Gibbons, was assigned to Shell as a welder/fitter to perform maintenance work on platforms. While he was moving pipe, which was to be attached to a fixed platform, from a materials barge to a jo-boat, he injured his back. Here, the welding activities were to be performed aboard the vessel, which housed the work crew, and were not to be performed on or in connection with any preexisting, fixed structure.
In determining whether a contract is maritime, the following six factors should be considered: (1) what does the specific work order in effect at the time of the injury provide? (2) what work did the crew, assigned under the work order, actually do? (3) was the crew assigned to work aboard a vessel in navigable waters? (4) to what extent did the work being done relate to the mission of the vessel? (5) what was the principal work of the injured worker? and (6) what work was the injured worker actually doing at the time of the injury? Davis & Sons, Inc. v. Gulf Oil Corp., 919 F.2d 313 (5th Cir.1990).
In accordance with the Master Liability Agreement, B & I provided a crew of welders to assist in the fabrication and installation of a pipeline. The work took place on a vessel in navigable waters, and the labor B & I’s crew performed was “inextricably intertwined with maritime activities since it required the use of a vessel and its crew.” Davis, 919 F.2d at 317. Sampsell, a mem *1140 ber of the B & I crew, was preparing to weld when he was allegedly injured.[5]
For the foregoing reasons, we hold that the agreement between OPI and B & I constituted a maritime contract and that the validity of the indemnity provision of the blanket contract between OPI and B & I must be assessed according to maritime law.[6] Furthermore, since state law does not apply, the waiver of subrogation clause is valid.
Accordingly, we reverse the judgment of the trial court granting B & I’s motion for summary judgment against OPI, as well as the judgment dismissing OPI’s motion for summary judgment against B & I. We render summary judgment in favor of OPI and against B & I. We further reverse the trial court’s judgment dismissing OPI’s motion for summary judgment against Fidelity and render summary judgment in favor of OPI and against Fidelity.
REVERSED.

. La.Rev.Stat.Ann. § 9:2780 (West 1991).

. The agreement was executed by OPI on November 1, 1988.

. The agreement provided, in pertinent part, that:
Contractor (B & I) agrees to defend, hold harmless, release and indemnify OPI from any and all claims, demands, losses and liabilities including property damage, and personal injury, illness and death of Contractor’s employees, arising out of, or directly or indirectly connected with, the work or services to be performed hereunder, or from the delivery, placement, use, defect or other deficiency of any equipment or supplies owned, rented, leased, operated, used or in any way placed aboard the vessel by Contractor, including the preparation of food and meals, whether OPI is at fault in whole or in part, or whether OPI is involved or sought to be involved because of strict liability or liability without fault, including the unseaworthiness of any vessel or vessels which OPI owns, operates or charters.

.Fidelity provided primary maritime employer’s liability coverage for B & I with limits of $25,000 for claims by masters and members of the crew of vessels.

. Not one piece of pipe had been welded at the time of plaintiffs injury.

. Having found the contract between OPI and B & I to be a maritime contract, maritime law applies of its own force, and conversely, pre-eludes the application of the OCSLA. 43 U.S.C. § 1333 (West 1986); Union Texas Petroleum Corp. v. PLT Engineering, Inc., 895 F.2d 1043 (5th Cir.1990), cert. denied 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990).