United States Court of Appeals,

Fifth Circuit.

No. 92-3379.

Hubert J. DUPRE, Jr., Plaintiff,

v.

PENROD DRILLING CORPORATION, Defendant-Third Party Plaintiff-Appellee,

v.

TOTAL MINATOME CORPORATION, Third Party Defendant Appellant.

June 17, 1993.

Appeal from the United States District Court For the Eastern District of Louisiana.

Before REYNALDO G. GARZA, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This case raises the issue of whether a contract for the supply and use of a vessel for drilling, completing, and tying-back oil wells, is maritime or nonmaritime. Total Minatome Corporation ("Minatome") and Penrod Drilling Corporation ("Penrod") agree that if the contract is nonmaritime, it is governed by Louisiana law and its indemnity provision is unenforceable. The parties also agree that if the contract is maritime, then the indemnity provision of the contract is governed by Texas law, pursuant to a choice-of-law provision in the contract. Minatome contends that the district court erred in concluding that the contract is maritime, and that the indemnity provision of the contract is enforceable under Texas law. We disagree, and accordingly affirm the district court's grant of summary judgment for Penrod.

I

Penrod entered into a contract with Minatome, whereby Penrod agreed to provide equipment and labor, and perform services for Minatome's four wells (G-1, G-2, G-3, and G-4) located in Vermillion Block 268 off the Louisiana coast on the outer continental shelf. The contract specifically required Penrod to equip and operate Penrod 97, a special purpose offshore jack-up drilling vessel, for drilling and completion of Minatome's four wells, and for tying-back the four wells to Minatome's

fixed offshore platform.

Hubert J. Dupre, Jr., a Minatome employee, allegedly slipped and fell on mud discharged from Penrod's jack-up rig onto scaffolding erected on Minatome's offshore platform. Dupre subsequently filed an action for damages against Penrod for an alleged injury to his lower back, claiming that his injuries were caused by "the negligence of Penrod in the operation of [Penrod 97]." Record on Appeal, vol. 2, at 234.

Penrod, in turn, filed a third-party complaint against Minatome, seeking indemnification under the contract.[1] Both parties filed motions for summary judgment on Penrod's indemnification claim. Minatome argued that the Louisiana Oilfield Indemnity Act of 1981 ("LOIA"), La.Rev.Stat.Ann. § 9:2780 (West 1991),[2] applies to Dupre's accident as surrogate federal law under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331-1356 (1988),[3] and forbids enforcement of the indemnity provision. In the alternative, Minatome argued that the indemnification provision

---

[1]Section 14.9 of the contract between Penrod and Minatome states that Minatome "agrees to protect, defend, indemnify, and save [Penrod] ... harmless from and against all claims, demands, and causes of action of every kind and character." *See* Record on Appeal, vol. 1, at 38.

[2]LOIA provides in part:

> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals ... is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La.Rev.Stat.Ann. § 9:2780 (West 1991).

[3]OCSLA provides in part:

> To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf.

43 U.S.C. § 1333(a)(2)(A) (1988).

in the contract is unenforceable under Texas law.[4]  In denying Minatome's motion, and granting

Penrod's motion for summary judgment, the district court concluded that (a) the contract is maritime

and (b) the indemnity provision in the contract is enforceable under Texas law.  788 F.Supp. 901.

Minatome filed a timely notice of appeal.

## II

We review the district court's grant of a summary judgment motion de novo.  *Davis v. Illinois*

*Cent. R.R.,* 921 F.2d 616, 617-18 (5th Cir.1991).  Summary judgment is appropriate if the record

discloses "that there is no genuine issue of material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The underlying facts of this action are not

disputed.  Therefore, we are left with determining whether the district court erred, as a matter of law,

in interpreting the terms of the contract.  *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578

(5th Cir.1986).

## A

Minatome contends that Louisiana law applies under OCSLA, and forbids enforcement of

the indemnity provision.  *See* Brief for Minatome at 8-15.  We have articulated the following test for

deciding whether a case is governed by OCSLA:

> [F]or adjacent state law to apply as surrogate federal law under OCSLA, three conditions are significant.  (1) The controversy must arise on a situs covered by OSCLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto).  (2) Federal maritime law must not apply of its own force.  (3) The state law must not be inconsistent with Federal law.

*Smith v. Penrod Drilling Corp.,* 960 F.2d 456, 459 (5th Cir.1992) (quoting *Union Texas Petroleum*

*Corp. v. PLT Eng'g,* 895 F.2d 1043, 1047 (5th Cir.), *cert. denied,* 498 U.S. 848, 111 S.Ct. 136, 112

L.Ed.2d 103 (1990));  *see also Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 355-66, 89

S.Ct. 1835, 1836-42, 23 L.Ed.2d 360 (1969).  Since we conclude that maritime law applies of its own

---

[4]Minatome correctly acknowledged that if the contract is maritime, then Texas law governs under the choice-of-law provision in the contract. *See Stoot v. Fluor Drilling Services, Inc.,* 851 F.2d 1514, 1517 (5th Cir.1988) ("In the absence of a choice of law clause, the construction of indemnity provisions in a contract involving maritime obligations is governed by maritime law. However, under admiralty law, where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law."  (citations omitted)).

force to this maritime contract, our discussion is limited to this issue.

What constitutes a maritime contract is a highly fact-specific inquiry, not determinable by rubric. *Davis & Sons, Inc. v. Gulf Oil Corp.,* 919 F.2d 313, 316 (5th Cir.1990); *see also Kossick v. United Fruit Co.,* 365 U.S. 731, 742, 81 S.Ct. 886, 894, 6 L.Ed.2d 56 (1961) (resorting to the observation that a contract is maritime if it has a "genuinely salty flavor"). We consider the following six factors in making this fact-specific determination:

> 1) what does the specific work order in effect at the time of injury provide? 2) what work did the crew assigned under the work order actually do? 3) was the crew assigned to work aboard a vessel in navigable waters? 4) to what extent did the work being done relate to the mission of that vessel? 5) what was the principal work of the injured worker? 6) what work was the injured worker actually doing at the time of the injury?

*Davis,* 919 F.2d at 316; *see also Smith,* 960 F.2d at 460 (adopting *Davis* factors); *Domingue v. Ocean Drilling & Exploration Co.,* 923 F.2d 393, 395-96 (5th Cir.1991) (same), *cert. denied, ---U.S. ----,* 112 S.Ct. 874, 116 L.Ed.2d 779 (1992).[5]

Applying the first *Davis* factor, we find that the contract specifically required Penrod to provide Penrod 97, a special purpose offshore drilling vessel, for the purpose of drilling and completing Minatome's wells G-1 through G-4, and for tying-back these wells to Minatome's fixed offshore platform. *See* Record on Appeal, vol. 1, at 35, 39. Applying the second and third *Davis* factors, we further find that Penrod's crew actually performed the obligations listed above while aboard Penrod 97.

Regarding the fourth *Davis* factor—the relationship of the work to the mission of the vessel—we initially note that a "contract related to oil and gas exploration and drilling takes on a salty flavor when the performance of the contract is more than incidentally related to the execution of the vessel's mission." *Domingue,* 923 F.2d at 396; *see also Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538 (5th Cir.1986) ("Not every contract touching incidentally on a vessel will be maritime: "In order

---

[5]Penrod contends that the *Davis* factors apply only when the contract is constantly redefined by subsequent work orders, and that the factors are inapplicable in a single contract situation such as the instant case. *See* Brief for Penrod at 13. This argument is unconvincing in light of two recent decisions by this Court applying *Davis* to single contracts. *See Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1119-21 (5th Cir.1992); *Hollier v. Union Texas Petroleum Corp.,* 972 F.2d 662, 663-65 (5th Cir.1992).

that such [maritime] character should attach, there must be a direct and proximate ... link between the contract and the operation of a ship....' " (quoting 1 Benedict on Admiralty § 183 (7th ed. 1985)) (alteration in original)). Here, the contract did not merely touch incidentally on a vessel, but specifically focused on the use of a vessel to drill, complete, and tie-back Minatome's four wells.[6] Minatome does not dispute that Penrod could not have performed its obligations under the contract without the vessel. In addition, we have previously held that contracts for the supply and use of a vessel for drilling and completing wells, and for general services connected therewith, are maritime in nature. *See Smith,* 960 F.2d at 459-60 (holding that a contract for the supply and use of a vessel for drilling, completion, and workover services was maritime); *Lewis v. Glendel Drilling Co.,* 898 F.2d 1083, 1086 (5th Cir.1990) (stating that "contracts to drill a well offshore or to provide general services in connection therewith are, when performed from a movable drilling platform, maritime obligations"); *Theriot,* 783 F.2d at 538-39 (holding that a drilling contract which specifically addressed the use of a vessel was maritime); *see also Dupont v. Sandefer Oil & Gas, Inc.,* 963 F.2d 60, 62 (5th Cir.1992) (adopting holding in *Smith* ).[7]

The fifth and sixth *Davis* factors require that we inquire into the principal work of the injured worker. In *Davis,* the principal work of the injured party was relevant in characterizing a work order as maritime or nonmaritime, because the injured party was engaged in performing work required

---

[6]Penrod specifically contracted to supply a jack-up drilling vessel, *see* Record on Appeal, vol. 1, at 39 (listing Penrod 97 as the main piece of equipment to be supplied), so that it could perform the following:

> A 4-pile, 16-slot platform will be installed. We plan to jack-up and cantilever over the platform to tie-back and complete G-1.... Wells G-2 and G-3 will be tied back and completed. Well G-4 will be tied back, deepened ... and completed. Wells G-1, G-2 and G-3 are planned as dual completions.

*See id.* at 35.

[7]Citing *Union Texas, Thurmond v. Delta Well Surveyors,* 836 F.2d 952 (5th Cir.1988), and *Laredo Offshore Constructors, Inc., v. Hunt Oil Co.,* 754 F.2d 1223 (1985), Minatome maintains that the contract should be characterized as nonmaritime because the tying-back of wells to a fixed offshore platform is a nonmaritime obligation. *See* Brief for Minatome at 9. Because the contracts in those cases did not specifically require the supply and use of a vessel to perform contractual services, we find those decisions distinguishable on their facts. *See Dupont,* 963 F.2d at 62 (distinguishing *Thurmond* on the ground that the contract there did not "explicitly provide for the supply and equipping of a vessel").

under the contract. *See id.,* 919 F.2d at 317. Here, Dupre was injured while performing work unrelated to the contract. *See* Record on Appeal, vol. 1, at 143. Therefore, the nature of his work has little relevance to the task of characterizing the contract as maritime or nonmaritime. *See Domingue,* 923 F.2d at 398 (finding fifth and sixth *Davis* factors irrelevant to characterizing contract where injured party's work unrelated to contract).

Left with the application of the first four *Davis* factors, the most significant fact to emerge is that the contract specifically focused on the supply and use of a vessel to drill and complete oil wells on the outer continental shelf, and to perform general services therewith. Therefore, we hold that our decisions in *Smith, Lewis,* and *Theriot* control our characterization of the contract, and that the contract is accordingly maritime.

B

Both parties agree that if the contract is maritime, then the indemnity provision of the contract must be construed according to Texas law. Minatome argues that under Texas law the indemnity provision of the contract is unenforceable because the parties to the contract did not intend for the indemnitee to seek indemnity for the consequences of its own negligence. *See* Brief for Minatome at 16-19. In construing indemnity contracts, we apply the same rules of construction as are applied to other contracts. *Maxus Exploration v. Moran Bros., Inc.,* 773 S.W.2d 358, 363 (Tex.App.—Dallas 1989) (citing *Ohio Oil Co. v. Smith,* 365 S.W.2d 621, 627 (Tex.1963), *overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705 (Tex.1987)), *aff'd,* 817 S.W.2d 50 (1991). We therefore must ascertain and give effect to the intentions of the parties as expressed in the instrument. *Spence & Howe Constr. Co. v. Gulf Oil Corp.,* 365 S.W.2d 631, 637 (Tex.1963), *overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705 (Tex.1987); *see also Ohio Oil,* 365 S.W.2d at 627. Where indemnitees seek indemnity for the consequences of their own negligence, the intent of the parties must satisfy the express negligence rule. *Ethyl Corp.,* 725 S.W.2d at 708. "Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract." *Id.*

The indemnity provision in the contract between Penrod and Minatome provides the

following:

> 14.9 Operator's Indemnification of Contractor:  Operator [Minatome] agrees to protect, defend, indemnify, and save Contractor [Penrod], its officers, directors, employees and joint owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Operator's employees....

Record on Appeal, vol. 1, at 38.  We believe this language—in particular, the terms "without limit and without regard to the cause or causes thereof or the negligence of any party or parties"—reflects the parties' intention to allow the indemnitee to seek indemnity for the consequences of its own negligence.  *See Maxus,* 773 S.W.2d at 363 (upholding indemnity agreement containing identical language);  *B-F-W Constr. Co., Inc. v. Garza,* 748 S.W.2d 611, 614 (Tex.App.—Fort Worth 1988, no writ) (holding as a matter of law that the language "regardless of cause or of any fault or negligence of the contractor" meets the express negligence test);  *see also Atlantic Richfield v. Petroleum Personnel,* 768 S.W.2d 724, 726 (Tex.1989) (holding that the language "including but not limited to any negligent act or omission" meets the express negligence test).  Accordingly, we hold that the intent of the parties satisfied the express negligence rule.

Minatome also contends that the injury sustained by Dupre was not covered by the indemnity provision, since Dupre was injured while performing work unrelated to the contract between Penrod and Minatome.  *See* Brief for Minatome at 19 (citing *Sun Oil Co. v. Renshaw Well Serv., Inc.,* 571 S.W.2d 64 (Tex.App.—Tyler 1978, no writ) and *Westinghouse Elec. Corp. v. Childs-Bellows,* 352 S.W.2d 806 (Tex.App.—Fort Worth 1961, no writ)).  We disagree.  The cases Minatome cites stand for the proposition that an indemnity provision containing the phrases "arising out of" or "in connection herewith" is not enforceable between a contractor and a subcontractor where the negligent act resulting in injury is unrelated to the performance of the contract.[8]  *See Sun Oil,* 571 S.W.2d at 70-71;  *Childs-Bellows,* 352 S.W.2d at 832.  There is no question here that Dupre's injury resulted from the negligence of Penrod in the performance of its contract.  Dupre alleged that he slipped on

---

[8]We further find limited precedential value in *Sun Oil* and *Childs-Bellows,* to the extent that they apply the "clear and unequivocal" test for determining whether the parties to a contract intended for the indemnitee to seek indemnity for the consequences of its own negligence.  *See Ethyl Corp.,* 725 S.W.2d at 708 (rejecting clear and unequivocal test in favor of the express negligence test).

mud discharged from Penrod 97, during Penrod's drilling operations. *See* Record on Appeal, vol. 1, at 179-80. Consequently, Dupre's injury was covered by the indemnity provision, which states that Minatome will indemnify Penrod from all claims, without regard to the negligence of any party, "arising in connection herewith."

III

For the foregoing reasons, we AFFIRM.