James Brady WALSH

v.

**SEAGULL ENERGY CORPORATION, et al.**

No. G–93–455.

United States District Court, S.D. Texas, Galveston Division.

Nov. 8, 1993.

David A. Bickham, Francis I. Spagnoletti, Spagnoletti & Assoc., Houston, TX, for James Brady Walsh.

Jill Annette Schaar, Liddell Sapp Zivley Hill & LaBoon, Houston, TX, for Seagull Energy Corp., Seagull Energy E & P Inc., Seagull Exploration Production, Inc.

Edward J. Patterson, III, Fulbright & Jaworski, Houston, TX, for Teledyne Movible Offshore, Inc., Teledyne Epsilon, Inc.

## ORDER OF REMAND

KENT, District Judge.

> [T]he subject of the removability of saving clause cases is beset by theoretical difficulties that cannot be resolved by reference to the cases, which are in a confused state, or by exploring the inferences of history.
>
> 14 Charles A. Wright, et al., *Federal Practice and Procedure* § 3674 (1985).

> Since the oil industry went offshore, the legal system has struggled to produce a body of injury law that is rational, fair, internally consistent, and acceptably productive of safety incentives. The result has been chaos.
>
> David Robertson, *Injuries to Marine Petroleum Workers: A Plea for Radical Simplification,* 55 Tex.L.Rev. 973, 973 (1977) (footnote omitted) (quoted in *Barger v. Petroleum Helicopters, Inc.,* 692 F.2d 337, 340 n. 4 (5th Cir.1982) (Rubin, J.), *cert. denied,* 461 U.S. 958 [103 S.Ct. 2430, 77 L.Ed.2d 1316] (1983).

Into such chaos this Court must now plunge, striving to determine whether a state court action for personal injuries suffered on a mobile drilling vessel in the course of oil exploration operations on the Outer Continental Shelf may be removed to a federal forum. The Court concludes that, despite Congressional attempts to federalize this area of the law, removal is unavailable. Therefore this Court lacks jurisdiction over the case and it must be remanded.

### Background

Plaintiff James Brady Walsh sued Defendants Seagull Energy Corporation and related entities ("Seagull") in a Texas District Court in Brazoria County, to recover for injuries he claims he suffered aboard the drilling vessel Teledyne Rig No. 19 while the vessel was moored at Galveston Block 343 off the coast of Texas. Walsh's injuries occurred while he was operating "dual string hydraulic tubing tongs," which are used to tighten or untighten tubing which the drilling vessel is either placing into or removing from a below-water well. In his Original Petition in state court Walsh stated a claim against

Seagull for "negligence." He did not, however, state what body of law he believed would govern this claim.

Galveston Block 343 is located on the Outer Continental Shelf ("OCS"). Seagull timely[1] removed the action to this Court under 28 U.S.C. § 1441 on the theory that Walsh's claims are governed by the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 et seq. Seagull claims a basis for removal under the grant of federal jurisdiction found in OCSLA at 43 U.S.C. § 1349(b)(1), and federal question jurisdiction under 28 U.S.C. § 1331. Before the Court is Walsh's motion to remand.

### *Saving to Suitors and Removal*

■ Under 28 U.S.C. § 1333, the federal district courts

... have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

By its plain language, this statute would appear to give the federal district courts exclusive original jurisdiction over maritime claims. In the manner that such rules evolve, however, the judiciary has invoked historical rationales to interpret the "saving to suitors" clause to preserve the availability of an ordinary "civil" action with "civil" remedies (as opposed to "admiralty" actions and remedies) for causes brought "in personam." Because traditionally the "civil" remedies preserved by this clause may be brought in state court, the saving clause is read to preserve the concurrent jurisdiction of the state courts over in personam claims. *Knapp, Stout, & Co. v. McCaffrey*, 177 U.S. 638, 20 S.Ct. 824, 44 L.Ed. 921 (1900). The exclusivity provision applies only to actions "in rem." *Madruga v. Superior Court of California*, 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed. 290 (1954); Charles A. Wright, et al., *supra*, § 3672.

The removal statute, 28 U.S.C. § 1441, provides that:

(a) ... any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States....

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the ... defendants is a citizen of the State in which such action is brought.

Walsh alleges, and Defendant Seagull does not contest, that Seagull is a citizen of Texas. Therefore the only possible ground for removal which it may assert under § 1441 is that Walsh has asserted a claim over which this Court has original jurisdiction and which is founded on a right "arising under" the laws of the United States.

■ Again because of the historical treatment of maritime claims, and because of the wording of the Constitution's grant of judicial power in Article III, the Supreme Court has held that a maritime claim is not one "arising under" the laws of the United States for the purpose of federal question jurisdiction under 28 U.S.C. § 1331. *Romero v. International Terminal Oper. Co.*, 358 U.S. 354, 359–80, 79 S.Ct. 468, 473–85, 3 L.Ed.2d 368 (1959); *see* Charles A. Wright, *supra*, § 3673. The *Romero* court noted in oft-quoted dicta that, if maritime claims were considered "federal questions," this would eliminate the "historic option of a maritime suitor pursuing a common-law remedy to select his forum, state or federal ... since saving clause actions would be freely removable." 358 U.S. at 371–72, 79 S.Ct. at 480. This reasoning has led to the conclusion that *Romero* also stands for the proposition that maritime

---

1. Walsh purports to "reserve" the issue of timeliness pending discovery. Untimeliness, however, is a procedural defect in removal against which the Plaintiff has only 30 days to object. 28 U.S.C. § 1447(c). Since 30 days have passed

without his raising the issue by motion, Walsh has waived any objection on this basis. *See In re Shell Oil Co.*, 932 F.2d 1518, 1522–23 (5th Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992).

claims do not "arise under" the laws of the United States for the purpose of federal question removal jurisdiction. Therefore, a maritime claim brought in State court cannot be removed on the sole basis that the maritime claim presents a federal question under § 1441(b). *In re Dutile,* 935 F.2d 61, 63 (5th Cir.1991).

■ In his motion to remand, Walsh makes the common misstatement that it is the saving clause that bars removal of maritime claims. *See, e.g., Holcomb v. ERA Helicopters, Inc.,* 618 F.Supp. 339, 343 (W.D.La. 1985) ("This [non-removability] rule has been established on the basis of the saving to suitors clause . . ."). The saving clause, however, had no direct role at all in the reasoning of *Romero.* Rather, maritime claims do not qualify for federal question removal simply because they are not claims "arising under" the laws of the United States. As the Fifth Circuit has noted:

> The "saving to suitors" clause does no more than preserve the right of maritime suitors to pursue non-maritime *remedies.* It does not guarantee them a nonfederal *forum,* or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty.

*Poirrier v. Nicklos Drilling Co.,* 648 F.2d 1063, 1066 (5th Cir.1981) (diversity of citizenship is grounds for removal of a maritime claim); *see also Uncle Ben's v. Hapag–Lloyd Aktiengesellschaft,* 855 F.2d 215, 217 (5th Cir.1988) (maritime claim removable where the remedy is governed by the federal Harter Act). Other than for its grant of concurrent jurisdiction to the state courts, the saving clause is irrelevant to the removal question. The question for this Court is solely whether Walsh's petition states a removable federal question, or whether remand is proper because this case is based on a petition which only asserts a maritime claim against an in-state defendant.

■ Seagull also argues that Walsh's claims cannot receive the benefit of the "saving to suitors" clause because he did not plead it in his Original Petition, nor did he state that he sought recovery under the maritime law. As the above discussion shows, this contention is irrelevant. For one thing, the burden of demonstrating the propriety of removal is on the removing party. *Ray v. Bird & Son & Asset Realization Co.,* 519 F.2d 1081, 1082 (5th Cir.1975). More importantly, one is not required to plead "saving to suitors" in order to benefit from the general non-removability of maritime claims; by filing in State court Walsh more than sufficiently indicated his intent to try his case there. Likewise, Walsh's failure to indicate the body of law he intends to proceed under does not open the door for Seagull to supplement the petition. If the petition on its face states a claim cognizable in maritime law, and does not necessarily state a federal question under the well-pleaded complaint rule, Walsh may resist removal based on the rule of *Romero.*

### OCSLA: The Chaos Continues

Seagull does not contest Walsh's characterization of the Teledyne Rig No. 19 as a "vessel" for the purposes of maritime law. *See Producers Drilling Co. v. Gray,* 361 F.2d 432, 437 (5th Cir.1966) (floating drilling rigs are vessels). Nor does Seagull contest the premise that a claim of negligence resulting in injuries suffered on a vessel in navigable waters states a cause of action under maritime law. Rather, Seagull primarily argues that the rules summarized above are inapplicable to this case because the accident occurred on a situs governed by OCSLA, OCSLA gives this Court subject matter jurisdiction over these claims, and OCSLA allows federal question removal on these facts.

Because Walsh's injuries occurred while working on an oil well on the OCS, the maritime nature of his claim is brought into question by the statutory imposition of federal law over such operations. OCSLA provides in 43 U.S.C.A. § 1333(a) that:

> (1) The Constitution and laws and civil and political jurisdiction of the United States are hereby extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exporing [sic] for, developing, or producing

resources therefrom ... to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State....

(2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws ... the civil and criminal laws of each adjacent State ... are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State....

The legislative history of this Act clearly shows that Congress intended to preempt the application of maritime law to activities on platforms on the OCS. *Rodrique v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 363–66, 89 S.Ct. 1835, 1841–42, 23 L.Ed.2d 360 (1969). Unfortunately for the sake of clarity, however, the statute itself does not say this. Rather, the statute boiled down says only that federal law applies on OCS oilfield structures, and that gaps in the federal law there will be filled by the law of the adjacent state. Nothing is said about the inapplicability of maritime law. This silence leaves open the possibility that, where the pre-existing maritime law would have already applied on the OCS, OCSLA added nothing.

The Supreme Court almost addressed this ambiguity in *Rodrique*, in deciding the applicability of the Death on the High Seas Act to wrongful deaths occurring on fixed platforms on the OCS. The Court first avoided the question, however, by concluding that the High Seas Act did not apply because events on drilling platforms had never been within admiralty jurisdiction. Nonetheless, the Court then opined that "[e]ven if the admiral-

ty law would have applied to the deaths occurring in these cases under the traditional principles, the legislative history shows that Congress did not intend that result." 395 U.S. at 361, 89 S.Ct. at 1840. This history showed that OCSLA "deliberately eschewed the application of admiralty principles to these novel structures...." *Id.* at 355, 89 S.Ct. at 1837. Because under maritime law the "social laws necessary for the protection of the workers and their families would not apply," and because the "special relationship between the men working on these artificial islands and the adjacent shore to which they commute to visit their families was also recognized," Congress dropped an earlier proposal to treat these structures as "vessels," using instead the state law of adjacent states to supplement the federal law on the OCS. *Id.* at 362–65, 89 S.Ct. at 1840–42.

■ Despite this extensive discussion, however, the *Rodrique* Court limited its actual holding in the case to the facts at hand:

At a minimum, the legislative history shows that accidents on these structures, which under maritime principles would be no more under maritime jurisdiction than accidents on a wharf located above navigable waters, were not changed in character by [OCSLA].

*Id.* at 366, 89 S.Ct. at 1842. This holding reinforced the possibility that, regardless of Congress' apparent intent, maritime law might apply to accidents on other types of OCSLA situses if maritime principles would dictate such a result in the absence of OCSLA. This possibility has been adopted as the law by most Fifth Circuit panels to address the issue. *Smith v. Penrod Drilling Corp.*, 960 F.2d 456, 459 (5th Cir.1992).[2] Therefore, in this Circuit, federal law as defined by

---

**2.** The *Smith* court noted the inconsistencies between individual Fifth Circuit panel decisions in this area:

In each new case, a panel of this court must comb through a bewildering array of cases that rely upon inconsistent reasoning in the hope of finding an identical fact situation. Absent en banc reconciliation, cases thus are decided on what seems to be a random factual basis. *See Lewis [v. Glendel Drilling Co.]*, 898 F.2d [1083] at 1084 [ (5th Cir.1990) ] ("[B]ecause of an apparently contradictory line of cases in our

circuit and the uncertain policy underpinning our result, the appellant would justly ask 'why' "?) [, *cert. denied*, —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991) ].

The court followed the earlier decision of *Laredo Offshore Constr. v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir.1985), and *Union Texas Petroleum Corp. v. PLT Eng'g*, 895 F.2d 1043 (5th Cir.), *cert. denied*, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990), rather than *Matte v. Zapata Offshore Co.*, 784 F.2d 628 (5th Cir.), *cert. denied*, 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986). 960 F.2d at 459.

OCSLA does not apply if maritime law applies "of its own force." *Id.* "When an event occurs on an OCSLA situs but also is governed by maritime law, maritime law controls." *Id.* In effect, this reasoning limits the application of federal law under OCSLA to events occurring on permanently fixed platforms.

The difficulty in consistent and predictable application of these principles is demonstrated by *In re Dearborn Marine Serv., Inc.,* 499 F.2d 263 (5th Cir.1974), *cert. dism'd,* 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975). There the plaintiff's decedent was killed while aboard a vessel moored to a fixed platform when the platform exploded. The Court ruled that the worker's claims against the platform owners were governed by OCSLA because he was a worker on the platform, he was aboard the vessel in furtherance of his platform duties, the cause of death was the platform explosion, and his cause of action was based on negligent performance of platform operations. *Id.* at 275–76. His claims against the vessel, however, were governed by maritime law under "traditional" principles, as any breach of duty by the vessel was "admiralty-related." *Id.* at 276–77; *see Smith v. Pan Air Corp.,* 684 F.2d 1102, 1110–11 (5th Cir.1982) (distinguishing the *Dearborn* extension of OCSLA).

A conceivable interpretation of OCSLA would place Mr. Walsh's cause of action within its scope. Paragraph (a)(1) of 43 U.S.C. § 1333 extends the laws of the United States to "all installations and other devices permanently or temporarily attached to the seabed" of the OCS for the purpose of oil production. As Mr. Walsh was either inserting or extracting well tubing at the time of his accident, the drilling vessel Teledyne Rig No. 19 must have been "temporarily attached" to the seabed for that purpose. Therefore it would seem that the rig matched the requisites to be treated as a "federal enclave" under OCSLA. *See Smith,* 960 F.2d at 460 (noting this argument).

The scope of paragraph (a)(1) is not described in the same terms as the choice of law provision, however. Paragraph (a)(2) adopts state laws for "artificial islands and fixed structures" on the OCS, with no reference to oil exploration. No indication is given in the statute whether these (a)(2) locations encompass all of the "permanent or temporary" installations referred to in paragraph (a)(1), or whether for some undefined rationale only permanent structures were intended to be within the scope of the second paragraph.

■ Under *Smith,* however, this Court is not currently saddled with the burden of divining the true meaning obscured by this ambiguous drafting. *Smith* dictates that if maritime law and OCSLA overlap, OCSLA is a nullity. Maritime law applies where an accident occurs on the high seas and in furtherance of an activity bearing a significant relationship to a traditional maritime activity. *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Furthermore, "[o]il and gas drilling on navigable waters aboard a vessel is recognized to be maritime commerce." *Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 538–39 (5th Cir.1986); *Smith,* 960 F.2d at 460 ("A very long series of cases [have] held that jackup boats are vessels. Even if the underwriters are correct that OCSLA is intended to apply to attached jackup boats, we are bound by our circuit precedent."); *see also Herb's Welding, Inc. v. Gray,* 470 U.S. 414, 416 n. 2, 105 S.Ct. 1421, 1424 n. 2, 84 L.Ed.2d 406 (1985) ("Workers on [floating drilling structures], unlike workers on fixed platforms, enjoy the same remedies as workers on ships."). Because Walsh's injuries occurred on the high seas, on a drilling vessel, while engaged in a recognized maritime activity, his cause of action is governed by maritime law. Therefore, whether the location of the accident might also have been an OCSLA situs is irrelevant under *Smith,* as maritime law applies of its own force. *See Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 217–20, 106 S.Ct. 2485, 2491–93, 91 L.Ed.2d 174 (1986) (maritime law, not OCSLA, governs crash on high seas of helicopter ferrying workers from OCS platform); *Dupre v. Penrod Drilling Corp.,* 993 F.2d 474 (5th Cir.1993) (following *Smith* to hold that a contract to provide a drilling vessel on the OCS is governed by maritime law, not OCSLA); *Holcomb,* 618 F.Supp. at 343 ("Be-

cause it is undisputed that the three plaintiffs in the case at bar were all assigned to the movable drilling rig ..., and none of the plaintiffs' work 'had furthered the operation of a fixed rig on the shelf,' the Court finds that the three cases fail to present any substantial federal question arising under OCSLA. Rather, the Court finds the cases to have a robust maritime flavor...." and therefore should be remanded.).

### OCSLA Jurisdiction and Removal

Seagull argues that removal of this case is proper nonetheless because this Court has jurisdiction over the case under OCSLA. This argument completely misses the relevant question presented to this Court: the question here is not whether this Court *could* exercise jurisdiction, but whether Defendant Seagull has the *right* to remove the case from State court.

This Court *could* exercise original jurisdiction over this case regardless of the choice of law question because the jurisdictional grant of OCSLA is more broad than its legal scope discussed above. OCSLA provides that:

[T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals....

43 U.S.C. § 1349(b). Because of this breadth, there is no dispute that Mr. Walsh could have filed his lawsuit in this Court, even though OCSLA does not provide the law governing his claim. *See Recar v. CNG Producing Co.*, 853 F.2d 367 (5th Cir.1988). In *Recar*, the federal district court in which the case was brought dismissed the plaintiff's complaint, which asserted jurisdiction solely under OCSLA, because it found the case to be governed by maritime law. The Fifth

Circuit reversed, holding that "[t]he district court may well have both admiralty jurisdiction under the general maritime law and federal question jurisdiction by virtue of OCSLA...." *Id.* at 369.[3] The Court explained that, while the district court may conclude that maritime law applies under the principles of *Executive Jet* and *Rodrique*, the choice of law issue is irrelevant to the fact that § 1349(b) invests original jurisdiction in the district court. *Id.* at 370; *see also Laredo Offshore*, 754 F.2d at 1233 (OCSLA vests federal court with jurisdiction to hear platform construction contract dispute). ·

Seagull focuses on *Recar*'s distinction between the choice of law and jurisdiction issues to argue a similar distinction here. *See Broussard v. John E. Graham & Sons*, 798 F.Supp. 370 (M.D.La.1992) (citing *Recar* to uphold the removal of an action which explicitly included OCSLA claims). In doing so, Seagull reveals the fundamental defect in its removal theory. Unlike *Recar*, the question here is not whether this Court has *subject matter* jurisdiction over this claim, but whether it has *removal* jurisdiction. OCSLA is not a removal statute. As Seagull is a citizen of Texas, the only grounds on which it can assert a right to removal under 28 U.S.C. § 1441 is that Walsh's State court petition pleads a substantial federal question. Therefore, the *sole* question for this Court is a choice of law question: whether Walsh's claim of "negligence" against the operator of a drilling vessel on the OCS is necessarily an action "arising under" the laws of the United States, or simply one arising under the general maritime law. *See Fogleman v. Tidewater Barges, Inc.*, 747 F.Supp. 348, 355 (E.D.La.1990) ("In federal question cases, removal jurisdiction is premised on the substantive law to be applied, i.e. the remedy.") Because the answer is the latter, Walsh has not pled a cause on which Seagull may base removal.[4]

---

**3.** Although the Court unfortunately used the term "federal question jurisdiction," the remainder of the opinion makes clear that the Court based its decision solely on the jurisdictional grant of 43 U.S.C. § 1349(b). Nowhere does the opinion refer to the general "federal question" jurisdiction statute, 28 U.S.C. § 1331, nor does it otherwise purport to rely on general "federal question jurisdiction."

**4.** In *Broussard*, the Court denied remand of an action explicitly pled under the "laws of Louisiana" because such laws could only apply on the OCS as surrogate federal law under 43 U.S.C. § 1333(a)(2). 798 F.Supp. at 372–73. This Court need not address here whether, had Walsh explicitly pled OCSLA, remand would nonetheless be proper because such a claim would not be one for which relief can be granted.

This point might be best illustrated by contrasting the present situation with one in which the Defendant was *not* a citizen of Texas. In that case, removal based on OCSLA jurisdiction *would* be proper under 28 U.S.C. § 1441(a) and the second sentence of § 1441(b), which together would allow removal of any such action over which the federal court has original jurisdiction. In fact, this is exactly the scenario on which the Fifth Circuit upheld removal under OCSLA jurisdiction in *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202 (5th Cir.1988), on which Seagull relies. Although that opinion unfortunately did not state the relevant citizenship of the parties, the Court based its decision solely on the general removal provision of 28 U.S.C. § 1441(a) and OCSLA jurisdiction under 43 U.S.C. § 1349(b). Therefore, the Court necessarily predicated its holding on the assumption that the defendants in those two cases, Amoco and Pennzoil, were not citizens of Louisiana, the state in which the cases were originally brought. *See* 28 U.S.C. § 1441(b).

In citing *Amoco* in support of its removal, Seagull apparently overlooked this critical distinction between that case and the present one. Absent such non-citizenship, § 1441(b) allows removal only for federal questions, and *Romero* dictates that a maritime claim is not such a question. Therefore, this Court—unlike the *Amoco* court—*does* have to "traverse the Serbonian Bog of the well pleaded complaint rule" to determine whether Walsh has necessarily pled a federal question. *Amoco*, 844 F.2d at 1205. As discussed above, this Court specifically finds that OCSLA does *not* govern Walsh's claims. Therefore *Uncle Ben's*, also cited by the Defendant, is also inapposite, because in that case the Court upheld removal precisely because it determined that a federal statute (the Harter Act) necessarily governed the plaintiff's otherwise maritime negligence claim. 855 F.2d at 217.

\*     \*     \*

In sum, despite the potential and probably intended breadth of the application of federal law under OCSLA to oilfield operations on the shelf, in practice the courts have read *Rodrique* to almost strictly limit its operation

as to personal injuries to accidents taking place on fixed platforms. Otherwise, where maritime law would apply of its own force, the statutory scheme of OCSLA is disregarded and maritime law applied. Therefore, Mr. Walsh's claim for "negligence" against the vessel on which he was injured while on the high seas states a classic maritime claim, not a claim under OCSLA. Because maritime claims are not ones "arising under" the laws of the United States for the purpose of federal question removal, and because Seagull's Texas citizenship bars other grounds for removal, this case must be remanded. *See Fogleman*, 747 F.Supp. at 355–56 (maritime claim brought in State court under saving clause cannot be removed on federal question grounds under OCSLA); *Coody v. Exxon Corp.*, 630 F.Supp. 202 (M.D.La.1986) (same).

For these reasons, this Court finds that the present case was removed improvidently and without jurisdiction, and Plaintiff's timely motion to remand should be GRANTED. Accordingly, the case is ORDERED REMANDED to the 23rd Judicial District Court of Brazoria County, Texas. It is further ORDERED that the parties file no further pleadings on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the courts of the State of Texas, as may be appropriate in due course. *See Hopkins v. Dolphin Titan Int'l, Inc.*, 976 F.2d 924 (5th Cir.1992) (remand of maritime claim for lack of removal jurisdiction may not be reviewed by appeal or otherwise). Any relief not specifically granted herein is DENIED.

IT IS SO ORDERED.