**Michael NASE, et al.**

v.

**TECO ENERGY, INC., et al.**

No. CIV.A. 04–0838.

United States District Court, E.D. Louisiana.

Dec. 3, 2004.

Stuart Housel Smith, Michael G. Stag, Lloyd Stafford Jolibois, Jr., Smith & Stag, LLC, New Orleans, LA, for Plaintiffs.

Michael David Fisse, Jonathan H. Sandoz, Daigle Fisse, PLC, Covington, LA, John A. Scialdone, Balch & Bingham, LLP, Gulfport, MS, W. Brett Mason, Breazeale, Sachse & Wilson, Baton Rouge, LA, George J. Fowler, III, Robert R. Johnston, Fowler, Rodriguez & Chalos, Mark John Spansel, Robert Bernard Nolan, Francis V. Liantonio, Jr., Adams & Reese, James F. Holmes, Christovich & Kearney, LLP, Charles (Chuck) R. Lane, Gregory Carl Weiss, Tobin James Eason, Weiss & Eason, David W. Leefe, Nathan B. Abercrombie, Liskow & Lewis, New Orleans, LA, for Defendants.

### ORDER AND REASONS

VANCE, District Judge.

The plaintiffs move the Court to remand the action to state court. For the following reasons, the Court GRANTS the plaintiffs' motion.

## I. BACKGROUND

On February 17, 2004, Michael Nase, Beverly Nase, and Glen Wilson sued four groups of defendants in state court. One group consists of Michael Nase's and Glen Wilson's former employers: Teco Energy, Inc., TODCO Management Services, Inc., Transocean Offshore U.S.A., Inc., Transocean Offshore Ventures, Inc., The Offshore Drilling Company, and Cliffs Drilling Company. The second group includes drilling companies: Flint Energy Services, Inc., GlobalSantaFe Corporate Services, Inc., and Helmerich & Payne, Inc. The third group consists of drilling fluid manufacturers and suppliers: BJ Services Company, U.S.A., Halliburton Energy Services, Inc., M–I L.L.C., d/b/a M–I Drilling Fluids, Inc., and Schlumberger Technology Corporation. The fourth group consists of only Buddy Horton, the safety manager for Cliffs Drilling. (Def.'s Answer at ¶ 13 (R. Doc. 15).)

### A. Michael Nase

Michael Nase alleges that from 1989 to 1995, he worked for Teco Energy, Inc. During that time, Teco explored, mined, and shipped phosphate. Phosphate is a Naturally Occurring Radioactive Material (NORM) that is hazardous, toxic, and carcinogenic. Nase alleges that he was exposed to the hazardous materials when he transported them. He asserts that Teco neither provided protective equipment, nor enforced any safety polices and procedures for handling the hazardous materials.

Nase also alleges that from 1995 to 1999, he worked as an oilrig mechanic. During that period, he allegedly inspected and maintained oilrig equipment in Venezuela under the direction of TODCO, The Offshore Drilling Company, and Cliffs Drilling Company, all of which are subsidiaries or related entities of Transocean Offshore U.S.A. or Transocean Offshore Ventures (collectively, Transocean).

In January of 2000, Nase was transferred to Abbeville, Louisiana. There, he worked as an oilrig mechanic on jack-up rigs in the Gulf of Mexico for TODCO. TODCO is a division or subsidiary of Transocean.

Nase alleges that the defendants engaged in the oil and gas exploration business in Venezuela, the Gulf of Mexico, or both. He asserts that the defendants had

custody and control of oilfield equipment that contained Technologically Enhanced Naturally Occurring Radioactive Material (TENORM)[1] and other hazardous, toxic, and carcinogenic materials. He alleges that he was exposed to drilling muds, drilling fluids, and oil solvents with known toxicological properties when he worked under the supervision of the employer and drilling company defendants. BJ Services, Halliburton Energy Services, or Schlumberger Technology allegedly manufactured or supplied these substances to Nase's employers.

Nase alleges that he contracted non-Hodgkin's lymphoma as a result of his occupational exposure to NORM, TENORM, or other hazardous, toxic, and carcinogenic materials from oilfield drilling operations. Nase alleges that the defendants knew of his exposure and the consequences, and they failed to warn him of the attendant dangers. Nase alleges that he was injured while he worked on vessels engaged in commerce and navigation, and his duties included performing service work that entailed the inspection and maintenance of vessel appurtenances. Thus, Nase alleges that general maritime law and the Jones Act govern his claims. In the alternative, Nase alleges that he was a maritime worker entitled to compensation under the Longshore and Harbor Workers' Compensation Act (LHWCA).

### B. Glen Wilson

Plaintiff Glen Wilson alleges that he worked as a mechanic, electrician, and maintenance supervisor for Transocean from February 1996 to August 2003. Transocean and the drilling company defendants engaged in oil and gas exploration in Venezuela, the Gulf of Mexico, or both. Wilson alleges that Transocean explored for, mined, and shipped NORM. He also alleges that Transocean and the drilling companies were in custody and control of oilfield equipment containing TENORM and other hazardous, toxic, and carcinogenic materials. He asserts that he was exposed to metal particulate, dust, fumes, oxides, or salts including beryllium, cadmium, chromium, mercury, or other naturally-occurring heavy metals with known toxicological properties. Wilson avers that he also exposed to drilling muds, drilling fluids, and oil solvents with known toxicological properties when he worked on oilrig equipment. BJ Services, Halliburton Energy Services, or Schlumberger Technology allegedly manufactured the drilling fluids and muds or supplied them to Wilson's employer.

Wilson alleges that he worked under the supervision of Transocean and the drilling company defendants and that he was exposed to TENORM and other hazardous, toxic, or carcinogenic materials as a result of using the defendants' equipment. He asserts that Transocean neither provided protective equipment nor enforced any health and environmental safety policies or procedures regarding hazardous materials.

Wilson alleges that he was diagnosed with bronchitis obliterans organizing pneumonia (BOOP) in May of 2001. Wilson asserts that he did not learn that occupational exposure to toxins may have caused his BOOP until June of 2003. Wilson alleges that the defendants knew of Wilson's exposure and the consequences of his exposure, and they failed to warn him of the dangers. Wilson alleges that he was a maritime worker entitled to compensation under the LHWCA.

---

1. TENORM is also known as NORM and Technologically Enhanced Radioactive Material (TERM).

## C. Procedural History

On February 17, 2004, the plaintiffs sued the defendants in state court. They demand damages for, *inter alia,* loss of enjoyment of life, physical disability, pain and suffering, disruption of bodily cells and tissues, medical expenses, loss of family relationships, loss of consortium. The plaintiffs allege causes of action under Louisiana law, the Jones Act, LHWCA, and general maritime law. On March 23, 2004, the defendants removed the action to this court alleging jurisdiction under the Outer Continental Shelf Lands Act (OCS-LA), or, in the alternative, complete diversity.

## II. REMOVAL STANDARD

■ Generally, a defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction. *See* 28 U.S.C. § 1441(a). If the defendant removes claims that "arise under" federal law, the defendant can remove the action without regard to the citizenship of the parties. *Id.* at § 1441(b). If, on the other hand, the defendant removes claims that do not "arise under" federal law, then removal is proper only if no defendant resides in the state of suit. *Id.* at § 1441(b). "The removing party bears the burden of establishing that federal jurisdiction exists" at the time of removal. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir.1995). Because the exercise of removal jurisdiction raises significant federalism concerns, the Court must construe the removal statutes strictly. *See Eastus v. Blue Bell Creameries, L.P.,* 97 F.3d 100, 106 (5th Cir.1996). With these basic principles in mind, the Court turns to the plaintiffs' motion to remand.

## III. MICHAEL NASE'S CLAIMS

On the face of his complaint, Nase asserts claims only under state law and maritime law. The defendants argue that removal is proper because Nase actually asserts a federal claim under the Outer Continental Shelf Lands Act. Furthermore, the defendants argue that removal under OCSLA is proper.

## A. The Federal Nature of Nase's Claims

Nase asserts only state law, maritime, and Jones Act claims in his complaint. Despite the apparent absence of a federal claim from his complaint, the defendants argue that his claims are actually federal claims under OCSLA.

For OCSLA to apply to an action, the plaintiff need not specifically assert any claims under OCSLA in the complaint. *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 154–55 (5th Cir. 1996); *Lopez v. Air Logistics, LLC,* 2002 WL 356305, at \*2 (E.D.La. Mar. 5, 2002). OCSLA governs if the complaint satisfies its statutory requirements. *Tennessee Gas,* 87 F.3d at 154–55; *Lopez,* 2002 WL 356305, at \*2. This means that the events must have occurred on the outer Continental Shelf, and the events must arise out of or relate to mineral production. 43 U.S.C. § 1331(a).

OCSLA defines the outer Continental Shelf to be "all submerged lands lying seaward and outside of the area of lands beneath navigable waters as defined in section 1301 of this title, and of which the subsoil and seabed appertain to the United States and are subject to its jurisdiction and control." *Id.* Section 1301 defines lands beneath navigable waters to be "all lands permanently or periodically covered by tidal waters up to but not above the line of mean high tide and seaward to a line three geographical miles distant from the coast line of each [ ] State." Therefore, OSCLA applies to submerged lands bordering the United States that are more

than three miles from the coast. Some of Nase's oilfield employment occurred more than three miles off the coast of Louisiana on the outer Continental Shelf in the Gulf of Mexico. Specifically, Nase admits that some of the jack-up rigs he worked on were more than three miles offshore Louisiana and he admits that he may have suffered chemical exposure during the time that he was assigned to work on those rigs. (Dep. of Nase at 43, 49.) Therefore, a portion of the events giving rise to the suit occurred on the outer Continental Shelf.

■ Furthermore, the events giving rise to Nase's claims on the outer Continental Shelf relate to mineral production. To determine whether events giving rise to a claim relate to mineral production, the Court applies a broad "but for" test. *Recar v. CNG Prod. Co.*, 853 F.2d 367, 369 (5th Cir.1988). But for the work Nase performed maintaining jack-up rigs that were used to explore for oil and gas in the Gulf of Mexico, he would not have been injured. *See Hufnagel v. Omega Service Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999) (applying OCSLA where, but for the plaintiff's work on a platform involving exploration, development, or production of minerals, the plaintiff would not have been injured); *Recar*, 853 F.2d at 369 (applying OCSLA where, but for the plaintiff's work maintaining oil rigs on the outer Continental Shelf, the plaintiff would not have been injured). Therefore, although Nase did not explicitly plead causes of action under OCSLA, OCSLA nevertheless applies to his claims because his claims meet the statutory requirements of location and relationship to mineral production.

## B. Removal of OCSLA Claims

■ Although OCSLA governs Nase's claims, the Court does not necessarily have removal jurisdiction. For removal to be proper, the defendants must show that the plaintiffs could have brought the action in federal court initially. In other words, the defendants must show that the federal courts have original jurisdiction over the action. 28 U.S.C. § 1441(a). If the action "arises under" federal law, the defendants can remove without regard to the citizenship of the parties. *Id.* at § 1441(b). If the action does not "arise under" federal law, the defendants can remove it only if no defendant is from the state of suit. *Id.*

### (1) OCSLA and Original Jurisdiction

OCSLA provides that:

[T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with, (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals . . .

43 U.S.C. § 1349. Thus, the district courts have original jurisdiction over actions governed by OCSLA.

### (2) OCSLA and Removal Jurisdiction

Although OCSLA provides for original jurisdiction in the district courts, it does not necessarily transform actions within its reach into actions "arising under" federal law. As noted *supra*, under 28 U.S.C. 1441(b), claims over which the district courts have original jurisdiction and "arise under" federal law are removable without regard to the citizenship of the parties. On the other hand, claims over which the district courts have original jurisdiction but do not "arise under" federal law are removable *only* if none of the defendants is a citizen of the state of suit. 28 U.S.C. 1441(b). Therefore, the Court must deter-

mine whether Nase's claims "arise under" federal law.

In *Tennessee Gas,* the Fifth Circuit discussed whether OCSLA claims "arise under" federal law for removal purposes. The court stated that "[g]iven the national interest that prompted Congress to pass OCSLA and grant broad jurisdiction under 43 U.S.C. § 1349, Congress arguably intended to vest the federal courts with the power to hear any case involving the OCS, even on removal, without regard to citizenship." *Tennessee Gas,* 87 F.3d at 156. Although this language suggests that an OCSLA claim arises under federal law for purposes of removal jurisdiction, the Fifth Circuit did not rule on the issue.[2] Whether an OCSLA claim can be removed as a federal question remains an unsettled issue of law. *Hufnagel,* 182 F.3d at 351.

 Nevertheless, in *Hufnagel,* the Fifth Circuit strongly suggested that OCSLA jurisdiction may not provide removal jurisdiction in general maritime cases if one of the defendants is from the state of suit. 182 F.3d at 350 ("[W]here a claim within OCSLA's grant of original federal court jurisdiction is nevertheless governed by maritime law, it arguably does not provide removal jurisdiction unless no defendant is a citizen of the state of suit, notwithstanding that it would fall within the federal district court's original jurisdiction under OCSLA") As the *Hufnagel* panel explained, this is because section 1441(b) restricts removal. *Id.* Specifically, although defendants may remove claims "arising under" federal law without regard to the citizenship of the parties, defendants may remove "[a]ny other such action" only if no defendant is from the state of suit. *Id.* It is settled law that maritime cases do not "arise under" federal law for purposes

of federal removal jurisdiction. *Tennessee Gas,* 87 F.3d at 153. Further, although OCSLA applies to all claims arising on the Shelf, it does not displace general maritime law if general maritime law is also applicable. *See id.* Based on the language in *Tennessee Gas* and *Hufnagel,* and in the absence of a clear statement of law by the Fifth Circuit, the Court finds that removal under OCSLA is not proper when maritime law governs the plaintiff's claim and one of the defendants is from the state of suit. *See Bulen v. Hall–Houston Oil Co.,* 953 F.Supp. 141, 145 (E.D.La.1997) (remanding because OCSLA did not provide removal jurisdiction over maritime claims); *Courts v. Accu–Coat Services, Inc.,* 948 F.Supp. 592, 595 (W.D.La.1996) (remanding because OCSLA did not provide removal jurisdiction over maritime claims when a defendant was from the state of suit); *Rivas v. Energy Partners of Delaware,* 2000 WL 127290, at *5 (E.D.La. Feb. 1, 2000) (remanding because OCSLA did not provide removal jurisdiction over maritime claims when a defendant was from the state of suit); *Shelton v. Tidewater, Inc.,* 1990 WL 103658, at *4 (E.D.La. July 16, 1990)(remanding because OCSLA did not provide removal jurisdiction over maritime claims when a defendant was from the state of suit). *Cf. also Bonnette v. Shell Offshore, Inc.,* 838 F.Supp. 1175, 1187 (S.D.Tex. 1993); *Walsh v. Seagull Energy Corp.,* 836 F.Supp. 411, 417 (S.D.Tex.1993); *Fogleman v. Tidewater Barges, Inc.,* 747 F.Supp. 348, 356 (E.D.La.1990); *Coody v. Exxon Corp.,* 630 F.Supp. 202, 205 (M.D.La.1986)(same); *Lopez v. Air Logistics, LLC,* 2002 WL 356305, at *5 (E.D.La. Mar. 5, 2002). *But see Broussard v. John E. Graham & Sons,* 798 F.Supp. 370, 374

**2.** This is because the defendant was not from the state of suit. Therefore, the action was removable under section 1441(b) even if the

plaintiff's claims did not arise under federal law. *Tennessee Gas,* 87 F.3d at 156.

(M.D.La.1992)(declining to remand where plaintiff asserted claims under both state law and general maritime law because state law claims provided basis for federal question jurisdiction regardless of what substantive law applied to the action); *Augillard v. Tidewater Marine, Inc.*, 1996 WL 467297, at *2 (E.D.La. Aug. 15, 1996)(same); *but cf. also Fallon v. Oxy USA, Inc.*, 2000 WL 1285397, at *2 (E.D.La. Sept. 12, 2000)(declining to determine whether maritime law applied to plaintiff's claims and therefore declining to remand); *Cahee v. Shell Offshore, Inc.*, 1990 WL 98864, at *1 (E.D.La. July 6, 1990)(same).

In this case, defendant Buddy Horton resides in Louisiana, the state of suit. Therefore, removal may not be proper if maritime law governs Nase's claims. Accordingly, the Court must make two determinations. First, the Court must determine whether maritime law governs Nase's OCSLA claims. Then, if maritime law governs, the Court must resolve the status of the in-state defendant, Horton. This is because the defendants have asserted that Horton is fraudulently joined. If the Court finds both that maritime law governs and that Horton is a proper defendant, then Nase's claims are not removable.

### (a) Maritime Law

■ To state a maritime claim, the plaintiff must allege a maritime location and a connection to traditional maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 533, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); *see also Hufnagel*, 182 F.3d at 352 (conducting the same inquiry to determine whether maritime law also governed plaintiff's OCSLA claims). To determine maritime location, the Court must decide whether the injury either occurred on nav-

igable water or, if the plaintiff sustained injury on land, that a vessel on navigable water caused the injury. *Grubart*, 513 U.S. at 533, 115 S.Ct. 1043. To determine connection to maritime activity, the Court must first assess " 'the general features of the type of incident involved' " and decide whether such an incident has a potentially disruptive impact on maritime commerce. *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)). Then, the Court must decide whether the activity giving rise to the incident has a substantial relationship to traditional maritime activity. *Id.*

■ The facts supplied in Nase's deposition show that Nase's OCSLA claims have a maritime location. The Fifth Circuit has held that, in some situations, "offshore drilling accidents giv[e] rise to admiralty tort claims." *Hufnagel*, 182 F.3d at 352–52. Significantly, the Fifth Circuit has found that an employee's claim for personal injuries sustained while repairing and maintaining a jack-up rig had a sufficient maritime location to support admiralty jurisdiction. *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir.1995) (en banc). Like the plaintiff in *Coats*, Nase alleges injury while working on jack-up rigs in navigable waters. (Dep. of Nase at 47.) Therefore, Nase's claims have a maritime location.

Moreover, the general features of the incident show that it has a potentially disruptive impact on maritime commerce. Nase alleges that he was exposed to cancer-causing toxic substances while performing repair work aboard the jack-up rigs. (Dep. of Nase at 43 (indicating possible chemical exposure while based in Abbeville); Dep. of Nase at 74 (indicating possible chemical exposure in the Gulf of Mexico).) The incident here, in general terms, could be described as employee exposure to toxic substances aboard a jack-

up rig. Exposure to toxic substances aboard a jack-up rig could potentially disrupt maritime commerce. For example, employees aboard the jack-up rig could become ill due to exposure. *Cf. Coats*, 61 F.3d at 1119 (finding that personal injury to a vessel employee could disrupt commerce). Or, rig employees could have to disrupt rig operations to remove the toxic substances. *Cf. Continental Ins. Co. v. Laneco Construction Sys., Inc.*, 1995 WL 295306, at *2 (E.D.La. May 5, 1995)(finding that a corrosive chemical blowing onto a vessel has the potential to disrupt maritime commerce because the exposure could disrupt the vessel's schedule).

 Additionally, the activity at issue is closely related to activity traditionally subject to admiralty law. Nase was performing repair work on jack-up rigs. "[T]he repair and maintenance of a jack-up drilling rig on navigable waters is certainly a traditional maritime activity." *Coats*, 61 F.3d at 1119. Therefore, Nase's claims have the requisite connection to traditional maritime activity.

The Court finds that Nase's claims for his injuries arising out of work on the outer Continental Shelf are subject not only to OCSLA, but also to maritime law. Accordingly, to decide whether the Court has removal jurisdiction over Nase's claims, the Court must determine whether the in-state defendant, Horton, is properly joined.

### (b) The In–State Defendant

The defendants assert that the plaintiffs fraudulently joined Horton. If Horton is not a proper defendant in the action, then removal of Nase's OCSLA claims is proper. If Horton is a proper defendant, removal of Nase's OCSLA claims is improper and the Court must remand.

 Fraudulent joinder "is established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) inability of the plaintiff to establish a cause of action against the non-diverse [defendant]." *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461–62 (5th Cir.2003) (citing *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). The defendant asserting fraudulent joinder bears a heavy burden of persuasion to prove to the Court that a defendant is fraudulently joined. *Id.* (citing *Travis*, 326 F.3d at 648). In pursuing this inquiry, the Court must give the benefit of every doubt to the plaintiff. Specifically, the Court must "'take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff.'" *Id.* at 463 (citing *Travis*, 326 F.3d at 649). Moreover, the Court must resolve all factual disputes in favor of the plaintiff. *Burden v. Gen. Dynamics*, 60 F.3d 213, 217 (5th Cir.1995). Finally, the Court must resolve all ambiguities of state law in favor of plaintiff. *See Ross*, 344 F.3d at 463.

Nase alleges that Horton is liable to him in intentional tort. (Pl.'s Compl. at ¶ IX.2.) The defendants argue that Horton is immune from suit under both the Louisiana and the Texas worker's compensation statutes. Both worker's compensation schemes immunize fellow and supervisory employees from suits arising out of negligent acts, but neither immunizes fellow and supervisory employees from suits arising out of intentional torts. *See* La. R.S. 23:1032; Tx. Lab.Code § 408.001. Therefore, the defendants argue that Nase cannot state a claim for intentional tort. Their sole basis for this assertion is Nase's deposition testimony where he admits that (1) he did not see, hear, or know of anything about whether Horton "intended to hurt" him while he was working in Venezuela, and (2) he never experienced personal apprehension that Horton was going

to or was trying to injure him while he was working in Venezuela. (*See* Def.'s Second Supplemental Mem. Opp'n Pl.'s Mot. Remand at 6 (citing Dep. of Nase at 29, 31).)

■ Contrary to the defendants' argument, the extent of Nase's knowledge of Horton's intent to injure him is not determinative of whether Nase can state a possible cause of action for intentional tort against Horton. 'Intentional' means that " 'the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result.' " *Swope v. Columbian Chemicals Co.*, 281 F.3d 185, 195 (5th Cir.2002) (quoting *Bazley v. Tortorich*, 397 So.2d 475, 480 (La.1981)). *See also Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex.1989)(noting that, in Texas, intent means " 'that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it' ")(quoting Restatement (Second) of Torts § 8A (1965)). Nase's responses to deposition questions directed only at whether he knew Horton "intended" to hurt him are insufficient to negate the possibility of recovery for his claim against Horton in intentional tort. The defendants have failed to carry their burden to show that Horton was fraudulently joined in Nase's intentional tort claim.

The defendants also argue that Horton is immune from the intentional tort claim under the LHWCA. The defendants are correct with regard to the LHCWA. Specifically, the LHCWA bars recovery for the intentional tort of another person in the same employ. *See* 33 U.S.C. § 933(i); *Sharp v. Elkins*, 616 F.Supp. 1561, 1567 (5th Cir.1985). Nase, however, argues only in the alternative that he is protected under the LHWCA. (Pl.'s Compl. at ¶ 5.) His primary allegation is that he is protected under maritime law, the Jones Act, and state law. Therefore, because Nase has a possible cause of action in intentional tort against Horton that is not barred by either the Louisiana or Texas worker's compensation schemes, the Court finds that the defendants have not shown that Nase fraudulently joined Horton.

### C. Remand

As noted *supra,* remand is proper if the removed claims do not arise under federal law and a defendant resides in the state of suit. Here, Nase's claims are maritime and they therefore do not "arise under" federal law. Moreover, defendant Buddy Horton resides in Louisiana. Accordingly, remand is proper.

## IV. GLEN WILSON

The defendants argue that removal of Glen Wilson's claims is proper because Wilson's and Nase's claims are improperly joined and complete diversity exists between Wilson and the defendants. According to the defendants, complete diversity exists because Wilson, a Louisiana resident, fraudulently joined defendant Buddy Horton, a Louisiana resident, for the purpose of destroying diversity.

### A. Joinder

■ "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties[, and the] joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Despite the presumption in favor of joinder, the Court has discretion to sever improperly joined parties. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir.1994). To deter-

mine whether parties are properly joined, a the Court considers (1) whether the right to relief arises "out of the same transaction, occurrence, or series of transactions or occurrences," and (2) whether there is a question of law or fact common to all of the plaintiffs that will arise in the action. FED R. CIV. P. 21(a). *See Porter v. Milliken & Michaels,* 2000 WL 1059849, at *1 (E.D.La. Aug. 1, 2000); *Lott v. Eastman Kodak Co.,* 1999 WL 242688, at *2 (N.D.Tex. April 16, 1999).

Nase and Wilson both allege, *inter alia,* exposure to toxic and carcinogenic substances while working for Transocean or its subsidiaries. (Pl.'s Compl. ¶¶ VI.6, VII.1.) Both allege exposure while engaged in land-based employment in Venezuela. (*Id.*) Both worked for Transocean during overlapping time periods. (*Id.*) Both allege that drilling muds and fluids on oilrig equipment contained the toxic and carcinogenic substances. (*Id.* at ¶¶ VI.12, VII.5.) Therefore, it appears that the plaintiffs allege injury arising in part out of the same series of transactions or occurrences. Additionally, both plaintiffs assert the same causes of action. (*Id.* at ¶¶ IX.1–7.) Therefore, there appear to be both questions of law and fact common to their cases.

In arguing that the plaintiffs' claims are improperly joined, the defendants fail to demonstrate to the Court how the claims do not arise out of the same transaction or series of transactions. Moreover, the defendants fail to explain to the Court how Nase's and Wilson's claims do not present common issues of law or fact. Instead, the defendants simply cite a legal standard and assert that the plaintiffs' claims are improperly joined. In the time since the defendants filed their opposition to the motion to remand, they have deposed the plaintiffs to gather evidence to support their allegation of jurisdiction in this court. In none of defendants' subsequent supple-

mental materials in opposition to the plaintiffs' motion to remand do the defendants substantiate their brief initial argument that plaintiffs claims are improperly joined.

Accordingly, the Court will not sever Nase's and Wilson's claims. The pleadings show that Nase and Wilson allege injuries arising out of the same series of acts or transactions in the course of their employment with Transocean in Venezuela. They also assert the same causes of action. Their claims are properly joined. *Cf. In re Norplant Contraceptive Prods. Liability Litigation,* 168 F.R.D. 579, 581 (E.D.Tex.1996)(finding claims properly joined when the plaintiffs alleged a general failure to warn against the manufacturer and asserted causes of action in negligence, misrepresentation and fraud, despite the fact that most of the plaintiffs saw different doctors and received treatment at different times).

### B. Fraudulent Joinder

The defendants argue that complete diversity exists between them and Wilson because Wilson fraudulently joined Horton. Because the claims of Nase and Wilson are properly joined, whether or not Wilson has a possible cause of action against Horton is irrelevant to jurisdiction because Nase has stated a reasonably possible claim against Horton. Complete diversity therefore does not exist. Thus, the Court does not reach the defendants' argument that Wilson fraudulently joined Horton.

### V. CONCLUSION

For the foregoing reasons, the Court GRANTS the plaintiffs' motion to remand the action to state court.